LEE, J.,
for the Court:
¶ 1. The appellant and plaintiff below, Girard Savings Bank, filed an “Amended Complaint to Remove Cloud on Title” in the Chancery Court of Smith County and appeals from the denial of its motion for summary judgment. After having entered by stipulation and agreement various records of the chancery clerk’s office in Simpson County as exhibits, the court found that title in the subject property was confirmed by tax deed to the defendant, Mark A. Worthey, and that any transfers made subsequently to the date of the tax deed by Mr. Worthey or his successors in title were confirmed against Goldome Credit Corp. and its successor in interest, Girard Savings Bank. We affirm.
*231 FACTS
¶ 2. On August 13, 1991, Goldome Credit Corporation acquired a parcel of land in Smith County by trustee’s deed. On March 31, 1992, Goldome entered into an agreement for deed with William E. McGill and Barbara A. McGill whereby Goldome agreed to convey title to the property to them upon an initial down payment of $450 and at the completion of 240 monthly installment payments of $253.58 each. The agreement stated that upon default for a period of ten days that payments made would be retained by Goldome as rent for the use of the premises to the time of default and that the McGills would be deemed to be tenants unlawfully holding over after the expiration of the lease. Gol-dome would then have the right to reenter and take possession. The agreement for deed also provided that the parties agreed that the document would not be recorded and that the McGills were required to pay all taxes imposed upon the property. Taxes, however, were assessed in the name of Goldome Credit. The McGills assumed possession under the terms of the agreement.
¶ 3. The taxes on the property were not paid, and the property sold for 1992 taxes on August 30, 1993 to Mark Worthey. Worthey also paid the taxes on the property for 1993 and received a tax deed for the property on September 1, 1995. At the time of the tax sale and the execution of the tax deed, the McGills were debtors in a pending bankruptcy proceeding.
¶ 4. At some point Goldome was liquidated by the FDIC and was required to sell its assets. On March 20, 1995, Gol-dome conveyed the property to Girard Savings Bank by Special Warranty Deed and assigned the agreement for deed made with the McGills to Girard Savings. Gir-ard Savings recorded this agreement on October 26, 1995. On October 31, 1995, Worthey conveyed by quitclaim deed the property to one Pickering who on the same day executed a deed of trust in favor of Worthey and a quitclaim deed in favor of Barbara McGill.
¶ 5. Girard Savings complains that through the recordation of the above mentioned instruments that Worthy and the McGills seek to divest it of title.
PROCEEDINGS IN THE LOWER COURT
¶ 6. At the trial the parties entered by stipulation and agreement into evidence eight documents recorded in the office of the Simpson County Chancery Clerk. It was also stipulated that Goldome Credit Corporation, the predecessor in interest to Girard Savings Bank, was properly notified as to the notices required by state statute regarding tax sales and that Gol-dome was the only entity at the time of the tax sale and execution of the tax deed with a recorded interest in the property.
¶ 7. The chancellor made his ruling based on these stipulations. He found that the agreement for deed did not cover Mark Worthey or his successors. He also found that though the McGills were in the midst of bankruptcy proceedings, they had no fee simple title to the property and that neither Goldome nor its successors in interest were involved in a bankruptcy that would have stayed any action taking issuance of the deeds. The automatic stay, therefore, did not apply in this set of circumstances.
¶ 8. The chancellor took notice that the period of time from 1993, when the property first sold for taxes, until 1995 when a deed was issued to Worthey, was sufficient time for Goldome to have established its right to the property. As a result the court found that Girard Savings Bank, as the successor in interest to Goldome, was bound by the actions of Goldome, who did not respond to the tax sale. Title was therefore confirmed in Worthey as of the date of the tax deed, and any transfers occurring from that date from Worthey or his successors in title were confirmed as against Goldome or its successors in interest.
*232 ¶ 9. In reviewing these issues, we are bound by the standard set forth and enumerated in Cummings v. Benderman, 681 So.2d 97, 100 (Miss.1996). In reviewing a chancellor’s decision, “the Court will not disturb the factual findings of a chancellor when supported by substantial evidence unless the Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard.”
ISSUES AND DISCUSSION
I. DOES AN AUTOMATIC STAY ISSUED PURSUANT TO U.S.C. § 362 IN A CHAPTER 13 BANKRUPTCY FILED BY DEBTORS WHO ARE A PARTY TO AN AGREEMENT FOR DEED TO PROPERTY OPERATE AS A STAY ON A TAX SALE AND TAX DEED TO THAT PROPERTY WHERE THE TAXES ARE ASSESSED IN THE NAME OF THE OTHER PARTY TO THE AGREEMENT FOR DEED?
¶ 10. Though Girard asserts that a purchaser’s interest in property under an agreement for deed is considered the property of the bankrupt estate and is therefore protected by the automatic stay imposed by 11 U.S.C. § 362, we are not persuaded by the cases upon which it relies, In re Matter of Rose, 7 B.R. 911 (S.D.Tex.1981) and State of North Dakota v. Hegstad, 134 F.2d 598 (8th Cir.1943). In re Matter of Rose does not make this statement unconditionally, rather it states that scrutiny of the particular circumstances surrounding the particular agreement is the approach necessary in order to determine whether such property is to be included within the bankruptcy estate. In re Matter of Rose, 7 B.R. at 912. Hegstad, 134 F.2d at 599, involved a farmer who purchased land under a sales contract whereby the State was to execute a quitclaim upon completion of the payments called for by the contract. That case relies on Salzer Lumber v. Claflin, 16 N.D. 601, 113 N.W. 1036, 1037 (1907), which enumerates the law in that state regarding the relation of the vendee in a contract for the purchase of real property by future payments. The vendee becomes the equitable owner of the land, and the vendor holds the legal title in trust for the purchaser and as security for the payment of the purchase price. Id. (citations omitted). Payment of the purchase price entitles the purchaser to a deed, and until such payment, his rights are measured under the rules applying to equitable owners. Though some states provide protection for the defaulting vendee under these circumstances, Boyd v. Watts, 316 N.C. 622, 342 S.E.2d 840, 843 (1986); Flett v. Turgeon, 699 P.2d 10, 12 (Colo.App.1984), Mississippi has traditionally deferred to the terms of the agreement.
¶ 11. Whether the automatic stay imposed by the pending bankruptcy of the McGills operates to stay the tax sales and subsequent tax deed to Mark Worthey hinges on two factors: (1) the nature of the property interest that the McGills acquired by virtue of the agreement for deed which they had executed with Goldome Credit and which was later assigned to Girard Savings Bank, and (2) the proper recordation of that property interest.
¶ 12. The agreement provided that Gol-dome would convey title to the property to the McGills at the completion of 240 monthly installment payments of $253.58 each and an initial down payment of $450. The agreement stated that upon default the payments made would be retained by Goldome as rent for the use of the premises to the time of default, and that the McGills would be deemed to be tenants unlawfully holding over after the expiration of the lease. Goldome would then have the right to re-enter and take possession. The terminology of the agreement for deed designating the payments as rent upon default makes it readily apparent that there was no interest in the property vested in the McGills at the time of their default. In addition, that Goldome provid *233 ed in the agreement for deed that the document would not be recorded and that taxes remained assessed in the name of Goldome Credit are terms indicative of the parties’ intent that title remain solely in Goldome.
¶ 13. Girard cites several cases arguing that under Mississippi law where a purchaser under an agreement for deed takes possession of the realty but the vendor retains title until after the purchase price is paid, the purchaser is considered to have already taken title, and the vendor is treated as a mortgage lienholder. Cole v. Haynes, 216 Miss. 485, 62 So.2d 779 (1953); J.M. Griffin Co. v. Jernigan, 170 Miss. 343, 154 So. 342 (1934); Strickland v. Kirk, 51 Miss. 795 (1875). The cases cited by Girard Savings Bank in support of this argument can be distinguished from the case at bar in that none of those cases included in their agreements a clause regarding the consequences of default such as we have here. In Strickland, bond for title had actually passed from vendor to vendee. Furthermore, these cases do not regard the confirmation of title on land or the removal of cloud on title which would often operate to take a case out of the rule stated. Griffin, 170 Miss. at 352, 154 So. 342. Cole, 216 Miss. at 496, 62 So.2d 779, recognizes the general principle in contract that the obligations a contract imposes on the parties determine its nature.
¶ 14. The agreement for deed is clear in its terms regarding default and the consequences thereof. Many jurisdictions have required that such an agreement for deed, often referred to as an installment land contract, be treated as a mortgage so that the defaulting vendee has the additional protections similar to those afforded in a foreclosure proceeding, such as redemption rights, Flett v. Turgeon, 699 P.2d 10,12 (Colo.App.1984); Lamberth v. McDaniel, 131 N.C.App. 319, 506 S.E.2d 295, 297 (1998), in order to temper the explicit language of the contract. Whatever the property interest acquired by the McGills by virtue of the agreement for deed, it is undisputed that it was not recorded and there was therefore no actual or constructive notice of this interest at the time of the tax sale in order to set it aside. In addition, there was no timely effort in the aftermath of the sale to assert the existence of the stay. We therefore find that a stay on an unrecorded interest in property does not serve to defeat an otherwise valid tax deed to that property.
II. IS PROPERTY VESTED BACK IN THE NAME OF ONE PARTY TO AN AGREEMENT FOR DEED WHEN THE OTHER PARTY TO THE AGREEMENT FOR DEED ACQUIRES TITLE THROUGH A VALID TAX SALE FROM A THIRD PARTY?
¶ 15. Girard argues that one of several owners of an interest in property may not terminate the interest of the others by purchase at a tax sale. He states that the “purchase of an outstanding tax title to common property by one co-tenant inures to the benefit of all co-tenants,” Gavin v. Hosey, 230 So.2d 570, 572 (Miss.1970), and that the McGills could therefore not purchase the property and eliminate Girard’s interest in it. The agreement for deed stated that title would be granted at the completion of 240 installment payments. A co-tenancy is therefore not the status of the relationship between neither Goldome Credit nor Girard Savings as its successor, as Girard argues, with the McGills.
¶ 16. There is no argument regarding the validity of the tax sale. The record transcript shows that Goldome was properly noticed of the tax sale and that when they “bellied up” the FDIC came in and there was no one competent there to even open the mail. As a result three to four hundred properties were lost to tax sales. We regret this unfortunate sequence of events for Goldome; however, Goldome is not without blame, and it along with its successors and assignees, must assume the consequences of their inaction. Their having failed to respond to the notices for the tax sale afforded the opportunity for a valid tax deed to be executed in favor of *234 Mark Worthey. Goldome’s interest in the property and that of Girard Savings as its assignee, including that derived from the agreement for deed it had executed with the McGills, was extinguished at that time. We do not know whether the McGills could have purchased the property on their own at the tax sale without being subject to the agreement for deed, since we are not privy to the pertinent facts regarding their default; however, we are not asked to make that determination. Nevertheless, there was no evidence presented indicating fraud or collusion with the McGills on the part of Worthey at the tax sales, and we will not infer it from the mere sequence of events. We find no authority showing that Wor-they should be denied the benefits of valid title to the property because Barbara McGill ultimately was the recipient of a quitclaim deed to the property.
CONCLUSION
¶ 17. Adhering to our standard of review in reviewing a chancellor’s decision, we find that the factual findings of the lower court are supported by substantial evidence, and we can say with reasonable certainty that the chancellor did not abuse his discretion, was not manifestly wrong or clearly erroneous, and did not apply an erroneous legal standard. Cummings v. Benderman, 681 So.2d 97, 100 (Miss.1996). We thus find that the quitclaim deed from Worthey to Pickering, executed contemporaneously with a deed of trust from Pickering in favor of Worthey, and the subsequent quitclaim deed in favor of Barbara McGill are valid instruments, and the learned chancellor was correct in his denial of Girard’s motion for summary judgment.
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF SMITH COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J, KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.