PROPST CONSTRUCTION CO. v. NORTH CAROLINA DEPARTMENT OF TRANSPORTATION

No. 8119SC604

(Filed 20 April 1982)

1. **Contracts §§ 20.2, 27.3— contract action—prevention of performance not applicable—issue for jury**

In a contract action to recover an additional amount for crushed stone used in the construction and paving of a highway for defendant on the ground that the platform scales used to weigh vehicles transporting the stone to the job site were defective and underweighed the stone and that defendant paid only for the amounts of stone shown by the defective scales, plaintiff did not prevent performance of the contract by defendant by failing to supply accurate scales so as to estop plaintiff from claiming additional compensation under the contract where the evidence showed that, while the contract required plaintiff to furnish the scales, it also required defendant to check the scales prior to use; the contract did not establish which party had the continuing responsibility to check the scales; and a representative of defendant normally checked the accuracy of the scales. Furthermore, the evidence presented at a hearing on a motion for summary judgment established a genuine issue of material fact as to how much crushed stone was actually delivered to the project by plaintiff where it tended to show that defendant paid for only 147,568 tons of stone; plaintiff estimated the amount of stone delivered as 177,334 tons by calculating an average weight per truck per day and multiplying that by the number of trucks on a given day; and defendant estimated that 170,974 tons of stone had been used by "cross-sectioning" the stockpiles of the stone.

2. **Rules of Civil Procedure § 56— hearing on summary judgment motion—oral testimony**

The trial court did not err in allowing oral testimony to be introduced at a hearing on a motion for summary judgment.

APPEAL by plaintiff from *Wood, Judge.* Judgment entered 21 April 1981, in Superior Court, MONTGOMERY County. Heard in the Court of Appeals 9 February 1982.

Plaintiff instituted this action under G.S. 136-29, against the North Carolina Department of Transportation (hereinafter referred to as either DOT or defendant) to recover damages for an alleged breach of contract. In its complaint, plaintiff alleged (1) that it contracted to grade, distribute stone onto, and pave the relocated roadbed of U.S. Highway 220 in Montgomery County; (2) that it was responsible for supplying the crushed stone, referred to as aggregate base coarse (ABC), for which defendant was to pay $5.05 per ton;[1] (3) that the platform scale used to weigh the vehicles transporting the stone to the job site was defective and inaccurate; and (4) that plaintiff delivered to the job site 29,463.25 tons of ABC which the scales did not reflect and for which defendant refused to pay. Additionally, plaintiff alleged that, by its calculations, it delivered to the roadbed 177,334.78 tons of ABC from the four stockpiles supervised and approved by DOT and that DOT's own estimates in "cross-sectioning" showed approximately 170,974 tons on the four stockpiles. Plaintiff, therefore, sought damages in the amount of $148,789.41, since DOT only paid for 147,568 tons of ABC.

Defendant in its Answer denied that it relied on defective scales, that it received more ABC than that for which it paid, and that it breached the contract. Defendant admitted that it had estimated 170,974 tons of ABC, but contended that it had fully compensated plaintiff for all work performed and materials used on the project. By amendment to the Answer, defendant was later allowed to allege, as part of the contract, Section 106-7 of

1. Later pleadings show that this aspect of plaintiff's contract was subcontracted to Lessees of B. V. Hedrick Company who, in turn, subcontracted the loading, weighing, and hauling to the road job to Contractor's Services and Supply, Inc., a subsidiary of Dickerson, Inc. The ABC for the job was placed on State owned and approved stockpiles at the quarry site.

*Standard Specifications for Roads and Structures* (July 1972) (hereinafter *Standard Specifications*) which reads:

> When material is to be paid for on a ton basis, the Contractor shall furnish platform scales and a weigh house except as otherwise provided in these specifications. The accuracy of the scales shall be one-half of one percent for all loads. The Contractor's platform scales will be checked by the Commission's Department of Materials and Tests prior to their use for weighing material on a project. . . .

Asserting that it had not waived this section of the contract and that plaintiff had had control of, and responsibility for, the scales, defendant contended that the plaintiff was barred from recovery due to its own material breach of the contract.

Defendant thereafter filed a motion for judgment on the pleadings or, in the alternative, for summary judgment. In its motion, defendant asserted that, if the scales supplied by plaintiff were inaccurate, the inaccuracy and any error resulting therefrom were due to plaintiff's failure to provide accurate scales. If this were the case, plaintiff itself had prevented performance of the contract by the defendant and was "estopped to take advantage of such act by insisting upon complete performance for some undeterminable quantity of stone."

Plaintiff responded with its own motion for summary judgment. After reviewing the pleadings, including interrogatories, affidavits, depositions, and oral testimony, the trial judge concluded that there was no genuine issue of material fact and that plaintiff was not entitled to relief under the contract. The plaintiff excepted to the judgment and appealed. The defendant submitted cross-assignments of error.

*Kluttz, Hamlin, Reamer, Blankenship & Kluttz, by Clarence Kluttz, and Malcolm Blankenship, Jr., for plaintiff-appellant.*

*Attorney General Edmisten, by Associate Attorney Blackwell M. Brogden, Jr., for the State.*

BECTON, Judge.

### Plaintiff's Appeal

Plaintiff assigns as error the trial court's granting of summary judgment in favor of defendant and its denial of partial sum-

mary judgment in favor of plaintiff. Four arguments are presented. For the reasons that follow, we believe the trial court erred in not submitting the case to the jury.

[1]   First, plaintiff contends that the doctrine of prevention relied upon by defendant in its motion for summary judgment was inappropriate under the facts of this case. The doctrine of prevention is that "one who prevents the performance of a condition, or makes it impossible by his own act, will not be permitted to take advantage of the nonperformance." *Harwood v. Shoe*, 141 N.C. 161, 163, 53 S.E. 616, 616 (1906). In order to excuse nonperformance, the conduct on the part of the party who allegedly prevented performance " 'must be wrongful, and . . . in excess of his legal rights.' " *Goldston Brothers v. Newkirk*, 233 N.C. 428, 432, 64 S.E. 2d 424, 427 (1951), *quoting* Page on Contracts, Vol. 5, Sec. 2919, p. 5145. *See also* 6 Corbin on Contracts § 1264 (1962).

Defendant's contention, set forth in its motion for summary judgment, was that plaintiff, by failing to provide accurate weight scales, prevented defendant's performance of the contract and should, therefore, be estopped from taking advantage of its failure. From the documents considered on the motion for summary judgment, however, it appears that defendant's contention oversimplifies a more complex factual situation. When we view the evidence set forth in those documents in the light most favorable to the plaintiff, as must be done in ruling on a motion for summary judgment, *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 29, 209 S.E. 2d 795, 798 (1974), we find that it tended to show that plaintiff, in accordance with the contract, provided the scales for weighing the stones for the highway project; that, under the terms of the contract, defendant had the responsibility to check the scales prior to use; that there was a representative of defendant present at the scales, signing each weight ticket; that, at about the midpoint of the project, the superintendent of hauling (who worked for Dickerson, Inc.) informed defendant's representatives that something was wrong with the scales, "because the weight had . . . [fallen] off so much;" and that the DOT representative agreed that something appeared to be wrong.

When deposed, an employee of Piedmont Scale Service stated that he examined the scales on 22 August 1978, after the project was completed, and found them broken. The scales were "under-

weighing" the vehicles, and the heavier the true weight of the vehicle, the greater the degree of error. Although the contract between plaintiff and defendant did not establish which party had the continuing responsibility to check the scales, Dickerson's superintendent of hauling stated in his deposition that the State "has a man that comes around and checks the scales." Nowhere in defendant's motion and nowhere in the documents considered on the motion for summary judgment do we find any allegation or evidence that plaintiff caused the scales to malfunction.

After reviewing the foregoing evidence, this Court agrees with the plaintiff that the doctrine of prevention does not apply to the circumstances of this case. Again, it is not clear who, plaintiff or defendant, had the responsibility to check the accuracy of the scales. Based upon the deposition of Dickerson's superintendent of hauling, it appears that the defendant normally checked the accuracy of the scales. Under the evidence considered on defendant's motion for summary judgment, plaintiff cannot be said to have "prevented" defendant's performance under the contract, *i.e.*, defendant's payment for the total amount of ABC delivered to the project.

Under the contract, defendant was obligated to pay for the actual tonnage of ABC delivered for the Highway 220 project. Defendant, however, paid only for the amount of ABC which showed on the allegedly defective scales. We believe that the evidence set forth at the hearing on the motions for summary judgment established a genuine issue of material fact as to how much ABC was actually delivered to the project. During the project, as the ABC was delivered to the stockpiles, plaintiff's employees had maintained records of tonnage used on the project by calculating an average weight per truck per day and multiplying that average by the number of trucks on the given day. The total figure they obtained was 177,334.25 tons. Compared with this is the estimate of 170,974 tons made by defendant in "cross-sectioning" the stockpiles. The stockpiles were under the control and supervision of defendant and were depleted at the end of the project. This evidence as well as the evidence derived from the weight tickets should have been allowed to go to the jury in order for the jury to determine the factual dispute concerning tonnage of ABC delivered. Summary judgment in favor of defendant was, therefore, improperly granted.

Having determined that plaintiff should be allowed to present to the jury its evidence of breach of an express contract, we find that plaintiff's argument based on the theory of *quantum meruit* is inappropriate. *"[Q]uantum meruit* must rest in an implied contract," *Burns v. Burns,* 4 N.C. App. 426, 429, 167 S.E. 2d 82, 84 (1969), and there can be no implied contract when there is an enforceable express contract between the parties as to the same subject matter. *Elec-Trol, Inc. v. Contractors, Inc.,* 54 N.C. App. 626, 630, 284 S.E. 2d 119, 121 (1981).

Furthermore, we reject plaintiff's argument that it was entitled to summary judgment on the issue of liability. It is for the jury to determine what amount of ABC was delivered to the project. The tonnage established by using the allegedly defective scales presents a genuine issue as to whether the defendant is liable for more tonnage than that for which it has paid.

Plaintiff's final argument is that the trial court erroneously entered judgment dismissing the complaint for failure to state a claim for relief under G.S. 1A-1, Rule 12(b)(6). In view of the trial court's language and the fact that, by consideration of matters outside the pleadings, defendant's motion to dismiss was converted to a motion for summary judgment under G.S. 1A-1, Rule 56, we have difficulty reading the judgment as allowing defendant's Rule 12(b)(6) motion. To the extent that it is so interpreted, it is erroneous.

### Defendant's Cross-Assignments of Error

[2] Under defendant's cross-assignments of error, it argues that the trial court erred in allowing oral testimony to be introduced into the record at the summary judgment hearing. While this Court has expressed some concern about the "overzealous use" of oral testimony in a hearing in a summary judgment motion, *Walton v. Meir,* 14 N.C. App. 183, 188-89, 188 S.E. 2d 56, 60-61, *cert. denied,* 281 N.C. 515, 189 S.E. 2d 35 (1972), the permissibility of such testimony was noted in *Kessing v. Mortgage Corp.,* 278 N.C. 523, 180 S.E. 2d 823 (1971), on the basis of G.S. 1A-1, Rule 43(e). Consequently, we find no error in the trial court's admission of oral testimony.

In conclusion, summary judgment granted in defendant's favor is

Reversed.

Judge HEDRICK and Judge HILL concur.