GEORGE WILBUR BOYD AND WIFE, PEARLINE W. BOYD v. JESSIE EDWARD WATTS

No. 218PA85

(Filed 6 May 1986)

1. **Vendor and Purchaser § 1— contract for sale of land—installment land contract rather than option**

    A contract for the sale of land was an installment land contract and not an option contract where defendant agreed to pay and plaintiffs' predecessor in interest agreed to sell the realty; defendant agreed to make monthly payments for the purchase price and to pay the taxes and insurance; plaintiffs' predecessor retained title to the property but agreed to execute and deliver a general warranty deed to defendant upon defendant's payment of the full purchase price, taxes, and insurance; and plaintiffs' predecessor gave defendant the right to live in and use the premises so long as the contract remained in full force and effect.

2. **Vendor and Purchaser § 11— installment land contract—nonpayment—forfeiture of title**

    Plaintiffs elected to pursue remedies that were available to them upon defendant's default when they brought an action asking that defendant's rights in an installment land contract be declared forfeited and cancelled and that their title to the real property be quieted.

Boyd v. Watts

3. Vendor and Purchaser § 11 — installment land contract — action to quiet title —
directed verdict proper

A directed verdict for plaintiffs was proper in an action to quiet title
under an installment land contract where defendant had clearly defaulted and
plaintiffs' rights did not turn upon the credibility of witnesses.

APPEAL by the plaintiffs from a decision of the Court of Appeals, 73 N.C. App. 566, 327 S.E. 2d 46 (1985), affirming in part and vacating and remanding in part the judgment of *Grant, J.*, entered 6 March 1984 in District Court, ROWAN County. The Supreme Court allowed the plaintiffs' petition for discretionary review on 3 July 1985. Heard in the Supreme Court on 10 February 1986.

*Griggs, Scarbrough & Rogers, by James E. Scarbrough, for plaintiff appellants.*

*Larry E. Harris, for defendant appellee.*

MITCHELL, Justice.

This case arose from an installment land contract initially entered into between Dayvault Enterprises, Inc. [hereinafter "Dayvault"], the vendor, and Jessie E. Watts, the defendant-vendee. The plaintiffs, George and Pearline Boyd, are successors in interest to Dayvault. The plaintiffs filed a complaint seeking to quiet title and for a declaratory judgment. The defendant-vendee answered and counterclaimed. At the close of all evidence, the trial court entered judgment dismissing the defendant's counterclaim and granting the plaintiffs' motions for directed verdicts in their favor on their claims.

The defendant-vendee appealed to the Court of Appeals. The Court of Appeals affirmed the dismissal of the defendant's counterclaim but vacated the judgment in favor of the plaintiffs on their claims against the defendant and remanded the case for further proceedings. For the reasons stated herein, we reverse that part of the decision of the Court of Appeals which vacated the judgment in favor of the plaintiffs on their claims against the defendant and remand the case to the Court of Appeals with instructions that the judgment of the trial court be reinstated.

The record on appeal discloses the following pertinent facts: On 23 December 1979, Dayvault entered into an installment land

contract with Jessie E. Watts, the defendant-vendee. The contract provided that the defendant agreed to buy and Dayvault agreed to sell the realty in question for a purchase price of $4,976.48, with $10.00 to be paid upon execution of the contract. The defendant agreed to make monthly payments of $75.00 toward principal and interest on the tenth day of each month, beginning on 10 January 1980, and to pay any balance remaining on 10 November 1984 by one final payment. The defendant-vendee also agreed to pay the taxes on the property and to pay for insurance. The contract also contained, *inter alia*, the following pertinent provisions:

BUYERS' RIGHT TO USE: So long as this Contract remains in full force and effect, the Buyers shall have the right to live in and use said premises.

DEFAULT: Upon default in the payment of any installment as set out herein, including pro-rated taxes and insurance, and should said default remain for a period of thirty (30) days, then said Sellers may take possession of the premises and expel the Buyers therefrom. In such event, all payments made under the terms of this Contract shall be deemed rental payments and said Sellers shall retain all payments for the rent of said premises.

SELLERS TO RETAIN TITLE: As security for the payment in full of the purchase price, the Sellers shall retain title to the property herein. Upon Buyers' payment in full of the purchase price, taxes and insurance premiums as provided herein, Sellers will execute and deliver to Buyers a Deed in fee simple for said premises, with general warranties and free from encumbrances except usual rights-of-way for utilities and streets, and Restrictive Covenants, if any, for the subject property. Sellers shall have thirty (30) days after the completion of all payments in which to deliver said Deed.

The defendant-vendee made the monthly payments under the contract in January, February and March of 1980. He then moved to Florida leaving the contract in arrears and without making any arrangements for payment of any other amounts. Mary Barnhardt and the plaintiff Pearline Boyd, sisters of the defendant-vendee, thereafter made some payments on the property to Dayvault. Thereafter, the plaintiffs alone began giving ·money for the

monthly payments to Mary Barnhardt who in turn made payments on the property to Dayvault. Dayvault did not act on the default provision in the contract, and in December 1980 the plaintiffs made up all of the arrearages owed under the terms of the contract.

On 23 December 1980, Dayvault conveyed its interest in the property to Harold L. Mills and wife, Audree S. Mills, by a general warranty deed which by its terms was made subject to the contract between Dayvault and the defendant. Dayvault also assigned all its right, title and interest in its contract with the defendant-vendee Watts to the Mills, and the Mills accepted the assignment. The plaintiffs made the payments to the Mills in January and February of 1981 and then ceased making payments.

On 25 May 1981, Harold L. Mills sent a "Notice of Default" to the defendant in care of his sister, Mary Barnhardt, and sent a copy to the defendant's last known address in Florida. Mills also posted a copy of the notice on the property. The notice stated in pertinent part that the defendant Watts had "defaulted in the payment due on April 1, 1981, to Harold L. Mills under the assignment to him of your contract with Dayvault Enterprises, Inc. . . . ." and that "all payments you have made under your contract with Dayvault Enterprises, Inc. shall be deemed rent, UNLESS you present the payments due under your contract on April 1, May 1 and June 1, 1981 . . . on or before June 10, 1981." No payment of these arrearages was ever received.

By a non-warranty deed executed on 12 June 1981 and recorded on 30 June 1981 in Book 597 at page 935, Rowan County Registry, the Mills conveyed their interest in the property to the plaintiffs, George and Pearline Boyd. On 22 June 1981, the Mills executed and the plaintiffs accepted an assignment of all "right, title and interest to and under the contract to sell the property to Jessie E. Watts . . . ." During December 1982, the defendant-vendee Watts refused the plaintiffs' request that he convey any interest he might have in the property to them by a quitclaim deed.

On 4 March 1983, the plaintiffs, George and Pearline Boyd, commenced this action praying that the defendant's rights in the contract "be declared forfeited and cancelled" and that "the plaintiffs' title to the real property . . . be quieted." The defendant

Watts answered alleging that the plaintiffs acquired title and accepted the assignment of the contract in bad faith and with unclean hands. The defendant also counterclaimed alleging that the plaintiffs' conduct amounted to fraud.

A jury trial was had on all issues. At the close of all the evidence, the trial court entered judgment granting the plaintiffs' motions for directed verdicts in their favor on their claims and dismissing the defendant's counterclaim. The defendant gave notice of appeal to the Court of Appeals.

The Court of Appeals affirmed that part of the trial court's judgment dismissing the defendant's counterclaim but vacated that part of the judgment quieting title in the plaintiffs and declaring the contract "forfeited and cancelled." It remanded the case with instructions that the defendant be given six months to exercise an option to purchase the property.

The plaintiffs' petition to this Court for discretionary review was limited solely to the issue of whether the Court of Appeals was correct in concluding that the trial court erred by entering judgment for the plaintiffs on their claims for quiet title and for a declaratory judgment. Although the defendant argued in his brief in the Court of Appeals that the trial court erred by dismissing his counterclaim, he neither presented nor discussed any such questions in his new brief filed with this Court, and they are deemed abandoned. N.C. App. R. 28(a). Therefore, we leave undisturbed that part of the Court of Appeals' opinion affirming the dismissal of the counterclaim. *See Williams v. Williams*, 299 N.C. 174, 261 S.E. 2d 849 (1980). The issues before this Court concern the effect the defendant's default had on his interest in the property.

[1] An installment land contract is a "[t]ype of contract by which [a] buyer is required to make periodic payments towards [the] purchase price of land and only on the last payment is the seller required to deliver a deed." Black's Law Dictionary 717 (rev. 5th ed. 1979). Such a contract is "[a]lso called a 'contract for deed' or 'long-term land contract.' " *Id.*

> The long-term contract for the sale of land . . . is a
> financing device in addition to being a contract dealing with
> the necessary details of the sale and purchase . . . .

> Although possession of the property remains in the vendor if the long-term contract is silent on the subject, the vast majority of long-term contracts transfer possession to the vendee at the beginning of the payment period. Legal title remains in the vendor as security for payment of the purchase price.

J. Webster, *Real Estate Law in North Carolina* § 138 (Hetrick rev. 1981). Also, "the purchaser generally . . . agrees to pay taxes, insurance, and to maintain the property . . . ." R. Boyer, *Survey of the Law of Property* p. 510 (3d ed. 1981). *See* Narron, *Installment Land Contracts in North Carolina,* 3 Camp. L. Rev. 29 (1981).

The Court of Appeals concluded that the contract in this case was "an option contract." 73 N.C. App. at 571, 327 S.E. 2d at 50. We disagree and conclude that it was an installment land contract. Under the contract the defendant agreed to buy and the plaintiffs' predecessor in interest agreed to sell the realty. The defendant agreed to make monthly payments toward the purchase price, to pay the taxes and to pay for insurance. In turn, the plaintiffs' predecessor retained title to the property but agreed to execute and deliver a general warranty deed to the defendant upon the defendant's payment of the full purchase price, taxes, and insurance. Also, the plaintiffs' predecessor gave the defendant the right to "live in and use said premises" so long as the contract "remains in full force and effect . . . ." The contract was an installment land contract.

[2] The contract contained the default clause previously set out herein. The Court of Appeals correctly determined that all of the evidence supported the trial court's conclusion that the defendant defaulted under the terms of that clause of the contract. However, we disagree with the Court of Appeals as to the effect of the default. Because the Court of Appeals deemed the contract to be an option contract, it stated that upon "default defendant retained the right to purchase by paying the unpaid balance plus contract interest at any time before 10 November 1984." 73 N.C. App. at 571, 327 S.E. 2d at 50. Because the contract in the case *sub judice* was an installment land contract, we deem the default to have had a different effect on the parties' rights.

This Court has "held repeatedly that 'the relation between vendor and vendee in an executory agreement for the sale and purchase of land is substantially that subsisting between mortgagee and mortgagor, and governed by the same rules.'" *Brannock v. Fletcher*, 271 N.C. 65, 70, 155 S.E. 2d 532, 539 (1967). The vendor may treat the default as a breach, thus making available to him various remedies. *Id.* at 73, 155 S.E. 2d at 541; Narron, *Installment Land Contracts in North Carolina*, 3 Camp. L. Rev. 29 at 38-46 (1981). The vendor, *inter alia*, may bring an action to quiet title, accept the noncompliance as a forfeiture of the contract, or bring an action to declare it at an end. *Id.; But see Hicks v. King*, 150 N.C. 370, 64 S.E. 125 (1909) (Court refused to allow forfeiture and ordered a foreclosure sale on the basis of the mortgage analogy). In this case the plaintiffs' complaint asked that "the defendant's rights in the contract . . . be declared forfeited and cancelled" and that "the plaintiffs' title to the real property . . . be quieted." Therefore, the plaintiffs elected to pursue remedies that were available to them upon the defendant's default. *Id.*

[3] A directed verdict is proper only when it appears that the nonmovant fails to show a right of recovery upon any view of the facts that the evidence tends to establish. *West v. Slick*, 313 N.C. 33, 40, 326 S.E. 2d 601, 606 (1985). Ordinarily, it is not permissible to direct a verdict in favor of a party on whom rests the burden of proof. Nevertheless, "[a] directed verdict for the party with the burden of proof, however, is not improper where his right to recover does not depend on the credibility of his witnesses and the pleadings, evidence, and stipulations show that there is no issue of genuine fact for jury consideration." *Financial Corp. v. Harnett Transfer*, 51 N.C. App. 1, 5, 275 S.E. 2d 243, 246, *disc. rev. denied*, 302 N.C. 629, 280 S.E. 2d 441 (1981).

The plaintiffs' rights in this case do not turn upon the credibility of the witnesses. The defendant clearly had defaulted under the terms of the executory installment land contract. Therefore, the plaintiffs properly brought an action to have title quieted in themselves and to have the contract declared to have been forfeited and the defendant's rights under the contract to be at an end. Given the record and briefs before us, we cannot say that the trial court erred when it granted the plaintiffs' motions and entered judgment in their favor as to those claims. The hold-

ing of the Court of Appeals vacating that part of the trial court's judgment must be reversed.

We note that the result we are constrained to reach was also that contemplated by the parties when they entered into this installment land contract. The contract provided that "[s]o long as this contract remains in full force and effect, the buyers shall have the right to live in and use the premises," and that upon "default remain[ing] for a period of thirty (30) days, then said Sellers may take possession . . . and expel the buyers" and "all payments . . . shall be deemed rental payments and said Sellers shall retain all payments for the rent of said premises." It seems clear the parties intended a forfeiture of the defendant's rights under the contract if he defaulted, and that all payments made prior to forfeiture were to be retained by the vendor.

Finally, we note that the contract in this case did not contain any provision for notice in case of default. The record shows that in 1981, the defendant was given notice of his default under the contract or that attempts were made to give him such notice. However, the briefs filed in this Court present no question concerning what if any notice to the defendant was required by law or by the contract or whether the notice given or attempted in this case was sufficient. *See generally* Narron, *Installment Land Contracts in North Carolina*, 3 Camp. L. Rev. 29 (1981). Our review "is limited to questions so presented in the several briefs." N.C. App. R. 28(a). Therefore, the parties are deemed to have abandoned any right to present such questions and we neither reach nor decide them. *Id.*

For the foregoing reasons we do not consider or disturb the holding of the Court of Appeals affirming that part of the trial court's judgment dismissing the defendant's counterclaim. We reverse the holding of the Court of Appeals which vacated that part of the trial court's judgment quieting the plaintiffs' title and declaring the contract forfeited and the defendant's rights ended. We remand the case to the Court of Appeals with instructions that the judgment of the District Court, Rowan County, be reinstated.

Reversed in part and remanded.