DIANNE CATER AND LYNNE O'CONNOR, PLAINTIFFS V. CATHERINE BARKER (NOW McKEON), DEFENDANT

No. COA04-795

(Filed 16 August 2005)

**1. Vendor and Purchaser— real estate escrow agreement— repairs**

Language in an real estate escrow agreement that defendant would "cause" repairs to be made to the building meant that summary judgment was correctly awarded to plaintiffs on an action for damages when the repairs were not completed, even though defendant offered an affidavit that she had authorized and agreed to pay for the work. Reading the escrow language with its ordinary meaning, defendant must fully complete the repairs rather than merely pay for them.

**2. Laches— damages—defense not applicable**

The defense of laches was not applicable to an action in which damages were awarded for failing to complete repairs to a building under an escrow agreement.

Judge GEER concurring in part and dissenting in part.

Appeal by defendant from judgment entered 18 March 2004 by Judge Zoro J. Guice, Jr., in Macon County Superior Court. Heard in the Court of Appeals 2 February 2005.

*Ronald Stephen Patterson, for plaintiffs-appellees.*

*Creighton W. Sossomon, for defendant-appellant.*

TYSON, Judge.

Catherine Barker (now McKeon) ("defendant") appeals from the trial court's judgment granting Dianne Cater and Lynne O'Connor (collectively, "plaintiffs") summary judgment on their claim for breach of contract. We affirm.

## I. Background

Plaintiffs purchased residential real property from defendant on 21 November 2000 in Macon County, North Carolina. Prior to closing, defendant began making repairs to the home. These repairs were either incomplete or had not begun at the time of the closing. The par-

ties entered into an "Escrow Agreement to Make Repairs" ("the Agreement") that provided in its entirety:

> CATHERINE BARKER as Seller of the lands being conveyed this date to DIANE CATER, LYNNE O'CONNOR and KATHLEEN C. O'CONNOR, Buyers, in consideration of Buyers' agreeing to complete the closing subject to this agreement, rather than wait for certain repairs to be completed by Seller on the house being sold hereby agrees, covenants and promises Buyers as follows:
>
> 1. Seller at her expense shall cause the repairs listed on Exhibit A to be made to the house, some of which have already been started.
>
> 2. The foundation footing for that portion of the house that has been formed and poured onto the ground and over tree stumps shall be repaired and/or replaced at Seller's expense so that the foundation for the entire house meets standards of the North Carolina Building Code and good residential construction standards.
>
> 3. The sum of $4,000.00 for the foundation work and $200.00 for the other repairs shall be escrowed by Philo, Spivey & Henning, P.A. at closing from Seller's net sales proceeds to be applied to these expenses. If the expenses of the repairs exceeds the sum being escrowed, Seller shall pay for any and all additional costs.

The record on appeal does not include Exhibit A to the Agreement. The parties have not specified what additional repairs other than the foundation were subject to the Agreement. Despite the repairs being incomplete, plaintiffs relied on the Agreement and agreed to close on the property.

On 13 January 2003, plaintiffs filed a verified complaint alleging defendant had breached the Agreement by failing to complete the repairs. Defendant answered and admitted the parties entered into the Agreement, but denied she failed to perform her obligations in accordance with the terms of the Agreement. Defendant also asserted the affirmative defenses of performance of the contract and laches.

Plaintiffs moved the trial court for summary judgment on 28 January 2004. Attached to their motion were sworn affidavits by both plaintiffs and Mr. Don Bates ("Mr. Bates"). Plaintiffs' affidavits both stated generally that they have been "damaged by the breach of the

repair agreement by the Defendant" and sought $14,500.00 in damages and $2,900.00 in attorney's fees and costs.

Mr. Bates's affidavit stated: (1) he had worked in the residential homebuilding and construction industry for twenty-eight years; (2) he had personal knowledge "of the repair work sought by the Plaintiffs in the above-captioned action;" and (3) the cost of the repairs would be $14,500.00 in labor and materials.

On 30 January 2004, defendant filed a motion for summary judgment alleging no issues of material fact exist and she is entitled to judgment as a matter of law. She attached her own affidavit, which stated in pertinent part:

6. That following closing, on or about December 9, 2000, a report from a qualified civil engineer had been obtained by my real estate broker, Larry Davis, regarding the necessary work to repair the foundation mentioned in the Escrow Agreement. Copy of this report is attached as Exhibit "2."

7. Following the receipt of this report, Mr. Larry Davis obtained an estimate to perform the necessary work from Shayne Boatwright in the amount of $5,500.00. At the time of the estimate, in late 2000 or early or [sic] 2001, Mr. Boatwright was able to perform the work during the spring of 2001 and as far as I know, no action was undertaken by Plaintiffs or their attorney to authorized [sic] the work to be performed at any time during the year 2001. I did not refuse to pay for the work required to be done at any time and in fact, authorized Mr. Davis to have the work performed.

I have no further information regarding what has transpire[d] with regard to this escrow account except for copy of letter [sic] received on or about May 29, 2002 from my attorney. This letter is attached as Exhibit "3" and includes a copy of a letter from Plaintiff's then-attorney, the holder of the escrow monies outlining the fact that some of the monies placed into escrow had been expended, namely $200.00 for other repairs which was proper under the Escrow Agreement and $475.00 for the engineering report attached hereinabove dated December 9, 2000.

The trial court granted plaintiffs' motion and awarded damages in the amount of $14,500.00, plus attorney's fees. Defendant appeals solely the trial court's grant of plaintiffs' motion for summary judgment.

CATER v. BARKER

[172 N.C. App. 441 (2005)]

## II.  Issues

The issues on appeal are whether the trial court properly granted plaintiffs summary judgment on: (1) the merits of plaintiffs' claim; and (2) defendant's defense of laches.

## III.  Standard of Review

Our review of a trial court's grant of summary judgment is well-established.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003); *see also Oliver v. Roberts*, 49 N.C. App. 311, 314, 271 S.E.2d 399, 401 (1980), *cert. denied*, —— N.C. ——, 276 S.E.2d 283 (1981).

In deciding the motion, " 'all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion.' " *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975) (quoting 6 *Moore's Federal Practice* § 56-15[3], at 2337 (2d ed. 1971); *accord, United States v. Diebald, Inc.*, 369 U.S. 654, 8 L. Ed. 2d 176 (1968)).

"The party moving for summary judgment has the burden of establishing the lack of any triable issue." *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989) (citing *Caldwell*, 288 N.C. 375, 218 S.E.2d 379). Once the moving party meets its burden, then the non-moving party must "produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial." *Id.* (citing *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981)). In opposing a motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." N.C. Gen. Stat. § 1A-1, Rule 56(e) (2003); *see also Nasco Equipment Co. v. Mason*, 291 N.C. 145, 149, 229 S.E.2d 278, 281 (1976).

We review *de novo* a trial court's grant of summary judgment. *Va. Electric & Power Co. v. Tillett*, 80 N.C. App. 383, 385, 343 S.E.2d 188, 191 (citation omitted), *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986). "Under a *de novo* review, the court considers the matter anew[] and freely substitut[es] its own judgment for [that of] the" trial

court. *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002) (quotation omitted).

## IV. Breach of Contract

[1] Defendant argues the trial court erred by granting plaintiffs' motion for summary judgment on their claim for breach of contract. We disagree.

A party asserting breach of contract must show: (1) existence of a valid contract; and (2) breach of the terms of that contract. *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) (citing *Jackson v. California Hardwood Co.*, 120 N.C. App. 870, 871, 463 S.E.2d 571, 572 (1995)). The existence of the Agreement is not disputed by either party. Further, defendant does not claim plaintiffs failed to perform their obligations under the Agreement. *See Boyd v. Watts*, 73 N.C. App. 566, 570, 327 S.E.2d 46, 49 (a party asserting breach of contract must have first performed his promise or offered to do so in order to preserve his rights under the contract (citations omitted)), *disc. rev. allowed*, 314 N.C. 114, 332 S.E.2d 479 (1985), *rev'd on other grounds*, 316 N.C. 622, 342 S.E.2d 840 (1986). The issue here is whether defendant breached the terms of the contract.

"It is a well-settled principle of legal construction that '[i]t must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean.' " *Hagler v. Hagler*, 319 N.C. 287, 294, 354 S.E.2d 228, 234 (1987) (quoting *Indemnity Co. v. Hood*, 226 N.C. 706, 710, 40 S.E.2d 198, 201 (1946) (citations omitted)).

> When a court is called upon to interpret, it seeks to ascertain the intent of the parties at the moment of execution. To ascertain this intent, the court looks to the language used, the situation of the parties, and objects to be accomplished. Presumably the words which the parties select were deliberately chosen and are to be given their ordinary significance.

*Briggs v. Mills, Inc.*, 251 N.C. 642, 644, 111 S.E.2d 841, 843 (1960) (citations omitted); *see also Corbin v. Langdon*, 23 N.C. App. 21, 25, 208 S.E.2d 251, 254 (1974) ("Where the language is clear and unambiguous, the court is obliged to interpret the contract as written, and cannot, under the guise of construction, 'reject what parties inserted . . . .' " (quotation and internal citation omitted)). "Under the general rules of contract construction, where an agreement is clear and unambiguous, no genuine issue of material fact exists and sum-

mary judgment is appropriate." *Carolina Place Joint Venture v. Flamers Charburgers, Inc.*, 145 N.C. App. 696, 699, 551 S.E.2d 569, 571 (2001) (citing *Corbin*, 23 N.C. App. at 27, 208 S.E.2d at 255).

The pertinent provision of the Agreement states, "Seller at her expense *shall cause* the repairs listed on Exhibit A to be made to the house, some of which have already started." (Emphasis supplied). Defendant contends the Agreement "does not require me . . . to do anything with respect to repairs to the foundation footing, other than deposit the sum of $4,000.00 in Plaintiff's [sic] attorneys['] escrow account and be responsible for any and all additional costs." She asserts that "all things required to be performed under . . . the agreement have been fully performed." However, defendant acknowledges that "[s]o far as I know, no repairs have been prepared by anyone to the subject premises . . . ."

The specific language chosen and agreed to by the parties was: "shall cause the repairs . . . to be made." Interpreting that language under its "ordinary significance" and "construed to mean what on its face it purports to mean" requires defendant to do more than just pay for the repairs; she must fully complete them as well. *Briggs*, 251 N.C. at 644, 111 S.E.2d at 843; *Hagler*, 319 N.C. at 294, 354 S.E.2d at 234. Under the specific terms of the Agreement, defendant has not "caused" the completion of the repairs and is in breach.

Defendant offered pleadings and evidence suggesting she attempted to perform her obligations under the Agreement. Her affidavit stated she authorized and agreed to pay Mr. Boatwright to complete the repairs, but never received authorization from plaintiffs. Defendant further asserts that she could not have done more without being in possession of the premises.

Under the terms of the Agreement, defendant was obligated to complete the repairs. Defendant does not allege plaintiffs prevented or frustrated her performance. Plaintiffs' activities did not rise to the level of discharge by prevention. *Propst Construction Co. v. Dept. of Transportation*, 56 N.C. App. 759, 762, 290 S.E.2d 387, 388 (1982) ("The doctrine of prevention is that 'one who prevents the performance of a condition, or makes it impossible by his own act, will not be permitted to take advantage of the nonperformance.' In order to excuse nonperformance, the conduct on the part of the party who allegedly prevented performance 'must be wrongful, and . . . in excess of his legal rights.' " (internal citations and quotations omitted)).

CATER v. BARKER

[172 N.C. App. 441 (2005)]

"Non-performance of a valid contract is a breach thereof . . . unless the person charged . . . shows some valid reason which may excuse the non-performance; and the burden of doing so rests upon him." *Blount-Midyette v. Aeroglide Corp.*, 254 N.C. 484, 488, 119 S.E.2d 225, 228 (1961) (quotation omitted). The Agreement was entered into by the parties on 21 November 2000. Plaintiffs commenced this action on 13 January 2003. Defendant's one attempt at performance over the course of two years cannot discharge her obligation.

Our review of the pleadings and evidence supporting plaintiffs' motion for summary judgment discloses a sufficient factual basis to support their claim of breach of contract. Plaintiffs supplied the trial court with the valid and enforceable Agreement, including each parties' obligations, and alleged "[d]efendant has willfully and without justifiable excuse refused to perform the terms of the agreement . . . ." and the "agreement has not been adhered to with the repairs being made . . . ." Defendant admits the repairs have not been completed. Plaintiffs satisfactorily showed the trial court that defendant has not performed her obligation.

After *de novo* review of the matter, we hold: (1) plaintiffs proffered sufficient pleadings and evidence to show defendant breached the Agreement and no genuine issues of material fact exist; and (2) defendant did not "set forth specific facts showing that there is a genuine issue for trial." N.C. Gen. Stat. § 1A-1, Rule 56(e).

In consideration for plaintiffs agreeing to close on the real property prior to completion of agreed upon necessary repairs, defendant promised to "cause the repairs . . . to be made to the house." Plaintiffs fully performed their obligations under the Agreement. Defendant admits the repairs have been completed. We hold the trial court properly granted plaintiffs' motion for summary judgment. *See Carolina Place Joint Venture*, 145 N.C. App. at 699, 551 S.E.2d at 571 ("Under the general rules of contract construction, where an agreement is clear and unambiguous, no genuine issue of material fact exists and summary judgment is appropriate."). This assignment of error is overruled.

## V. Laches

**[2]** Defendant contends issues of fact exist concerning her defense of laches against plaintiffs' claim. We disagree.

CATER v. BARKER

[172 N.C. App. 441 (2005)]

We previously held, "[l]aches is an equitable defense and is not available in an action at law." *City-Wide Asphalt Paving, Inc. v. Alamance County*, 132 N.C. App. 533, 537, 513 S.E.2d 335, 338 (1999) (citations omitted), *disc. rev. denied and appeal dismissed*, 350 N.C. 826, 537 S.E.2d 815 (1999). When a "[p]laintiff's claims are legal in nature, not equitable[,]" laches cannot support judgment for the defendant. *Id.*

Plaintiffs initially sought specific performance and in the alternative, damages, for defendant's breach of the Agreement. The trial court's summary judgment awarded plaintiffs' damages, a legal remedy, not specific performance. The defense of laches is not applicable. The trial court did not err in granting summary judgment to plaintiffs on the defense of laches. This assignment of error is overruled.

## VI. Conclusion

Plaintiffs and defendant entered into a binding, enforceable, and unambiguous Agreement. Plaintiffs performed their obligation under the Agreement. Despite having over two years to perform her duty, defendant did not complete the repairs and breached the Agreement. Defendant was not prevented, excused, or discharged from performing her obligation.

Plaintiffs were awarded damages, a legal remedy. Defendant's defense of laches is inapplicable to the facts at bar. Plaintiffs' motion for summary judgment was properly granted. The trial court's judgment is affirmed.

Affirmed.

Judge McGEE concurs.

Judge GEER concurs in part and dissents in part.

GEER, Judge, concurring in part and dissenting in part.

I agree with the majority that since plaintiffs seek no equitable relief in this case, the trial court did not err in granting summary judgment to plaintiffs on the defense of laches. I believe, however, that issues of fact remain regarding whether defendant breached the parties' agreement and, therefore, respectfully dissent.

The parties' agreement provided in its entirety:

CATHERINE BARKER as Seller of the lands being conveyed this date to DIANE CATER, LYNNE O'CONNOR and KATHLEEN C. O'CONNOR, Buyers, in consideration of Buyers' agreeing to complete the closing subject to this agreement, rather than wait for certain repairs to be completed by Seller on the house being sold hereby agrees, covenants and promises Buyers as follows:

1. Seller at her expense shall cause the repairs listed on Exhibit A to be made to the house, some of which have already been started.

2. The foundation footing for that portion of the house that has been formed and poured onto the ground and over tree stumps shall be repaired and/or replaced at Seller's expense so that the foundation for the entire house meets standards of the North Carolina Building Code and good residential construction standards.

3. The sum of $4,000.00 for the foundation work and $200.00 for the other repairs shall be escrowed by Philo, Spivey & Henning, P.A. at closing from Seller's net sales proceeds to be applied to these expenses. If the expenses of the repairs exceeds the sum being escrowed, Seller shall pay for any and all additional cost.

The record on appeal does not include Exhibit A to the agreement and the parties have not specified what repairs other than the foundation were subject to the agreement.

In support of their motion for summary judgment, plaintiffs submitted their own affidavits with each stating only generally "[t]hat she has been damaged by the breach of the repair agreement by the Defendant" and seeking $14,500.00 in damages and $2,900.00 in attorneys' fees and costs. The affidavits supplied no facts whatsoever about the breach apart from the conclusory claim that the agreement was breached. Plaintiffs also submitted the affidavit of Don Bates, who stated (1) that he had worked in the residential homebuilding and construction industry for 28 years, (2) that he had personal knowledge "of the repair work sought by the Plaintiffs in the above-captioned action," and (3) that the cost of the repair would be $14,500.00 in labor and materials. Thus, Mr. Bates' affidavit supplied no information about any breach of contract either. In short,

plaintiffs sought summary judgment based on their bare assertion that defendant breached the agreement and based on evidence of their damages.

Defendant responded with her own affidavit, which stated in pertinent part:

6. That following closing, on or about December 9, 2000, a report from a qualified civil engineer had been obtained by my real estate broker, Larry Davis, regarding the necessary work to repair the foundation mentioned in the Escrow Agreement. Copy of this report is attached as Exhibit "2".

7. Following the receipt of this report, Mr. Larry Davis obtained an estimate to perform the necessary work from Shayne Boatwright in the amount of $5,500.00. At the time of the estimate, in late 2000 or early or [sic] 2001, Mr. Boatwright was able to perform the work during the spring of 2001 and as far as I know, no action was undertaken by Plaintiffs or their attorney to authorized [sic] the work to be performed at any time during the year 2001. I did not refuse to pay for the work required to be done at any time and in fact, authorized Mr. Davis to have the work performed.

I have no further information regarding what has transpire[d] with regard to this escrow account except for copy of letter [sic] received on or about May 29, 2002 from my attorney. This letter is attached as Exhibit "3" and includes a copy of a letter from Plaintiff's then-attorney, the holder of the escrow monies outlining the fact that some of the monies placed into escrow had been expended, namely $200.00 for other repairs which was proper under the Escrow Agreement and $475.00 for the engineering report attached hereinabove dated December 9, 2000.

The North Carolina Rules of Civil Procedure provide that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). In deciding the motion, " 'all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion.' " *Caldwell v. Deese,* 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975) (quoting 6 James W. Moore et al., *Moore's Federal Practice* § 56-15[3], at 2337 (2d ed. 1971)).

CATER v. BARKER

[172 N.C. App. 441 (2005)]

The party moving for summary judgment has the burden of establishing the lack of any triable issue. *Collingwood v. General Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). Once the moving party meets its burden, then the non-moving party must "produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial." *Id.* In opposing a motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." N.C.R. Civ. P. 56(e).

On appeal, this Court's task is to determine, on the basis of the materials presented to the trial court, whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. *Oliver v. Roberts*, 49 N.C. App. 311, 314, 271 S.E.2d 399, 401 (1980), *cert. denied*, 276 S.E.2d 283 (1981). A trial court's ruling on a motion for summary judgment is reviewed *de novo* as the trial court rules only on questions of law. *Va. Elec. & Power Co. v. Tillett*, 80 N.C. App. 383, 384-85, 343 S.E.2d 188, 191, *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986).

In this case, the parties agree that a valid contract existed. The primary question before this Court is whether a genuine issue of material fact exists regarding whether defendant breached that contract. The agreement specified that "Seller at her expense shall cause the repairs listed on Exhibit A to be made to the house"; that "[t]he foundation footing . . . shall be repaired and/or replaced at Seller's expense"; and that Seller would place $4,200.00 in escrow to be applied to the cost of the foundation work and other repairs, with Seller being responsible for any additional sums necessary to complete the repairs. In response to plaintiffs' conclusory assertion that defendant breached that agreement, defendant submitted her own affidavit stating that she paid $4,200.00 into the escrow account; that she obtained (1) a report specifying the work necessary to repair the foundation and (2) an estimate from Shayne Boatwright of $5,500.00 for completion of that work; that Mr. Boatwright was available to perform the work; and that defendant authorized that the work be done. Defendant asserts that plaintiffs did not, however, authorize Mr. Boatwright to do the work.

When the evidence is viewed in the light most favorable to defendant, as the non-moving party, I believe that it supports a find-

CATER v. BARKER

[172 N.C. App. 441 (2005)]

ing that defendant had located a contractor and authorized that the work be done. Since defendant was no longer in possession of the premises, it is difficult to see what more defendant could do to comply with the agreement.

The majority suggests that defendant has failed to offer evidence that plaintiffs interfered with defendant's causing the repairs to be made. Defendant's affidavit, however, states: "[N]o action was undertaken by Plaintiffs or their attorney to authorize[] the work to be performed at any time during the year 2001." The majority does not explain how repairs could be performed on plaintiffs' property without plaintiffs' authorization. Given the brevity of plaintiffs' evidentiary showing, defendant's affidavit should be sufficient to defeat summary judgment.

I believe that the majority substitutes itself for the jury when it asserts that "[d]efendant's one attempt at performance over the course of two years cannot discharge her obligation." A reasonable jury could decide that defendant's efforts in obtaining a report identifying the repairs necessary, locating a contractor to perform the work, authorizing the contractor to begin work, and notifying plaintiffs was sufficient to comply with her obligations under the agreement. It is not for this Court to make that determination especially given the almost non-existent nature of plaintiffs' evidentiary showing.

While undoubtedly there is more to this story, plaintiffs chose not to present their version of the facts and their theory of their claim to the trial court. Neither plaintiffs' summary judgment materials nor their brief on appeal demonstrate why defendant's actions constituted as a matter of law a breach of the agreement. Simply asserting that a breach has occurred, without adding any factual details to support such a claim, should be insufficient to establish entitlement to judgment as a matter of law on a breach of contract claim when the defendant has offered evidence suggesting that no breach occurred.