IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-931

Filed 2 January 2024

Forsyth County, No. 19 CVD 5145

LUCINDA M. MEEKER, Plaintiff,

v.

JAMES E. MEEKER, Defendant.

Appeal by Defendant from Order entered on 28 June 2021 and from Contempt Order entered 30 November 2021 by Judge Lawrence J. Fine in Forsyth County District Court. Heard in the Court of Appeals 5 September 2023.

*Connell & Gelb PLLC, by Michelle D. Connell, for plaintiff-appellee.*
*Jonathan McGirt, for defendant-appellant.*

DILLON, Judge.

James E. Meeker ("Husband") appeals from an Order entered finding him in breach of a support provision in a separation agreement and from a Contempt Order finding him in contempt of the Order.

I.     Background

Husband and Lucinda M. Meeker ("Wife") were married in 1982, had two children by 1996, separated in 2009, and divorced in May 2011.

In 2010, after separating but before divorcing, Husband and Wife entered into a separation agreement (the "Agreement"). The Agreement provided, among other

matters, that Husband pay Wife spousal support of $7,577.78 each month[1] until 2025 and that Wife waive any right to alimony in any subsequent divorce action. The Agreement also provided that, while each party was free to reside anywhere and with anyone (s)he "may deem fit or as each of them may desire[,]" Husband's obligation to pay spousal support would terminate prior to 2025 upon the "death, remarriage, or cohabitation" of Wife.

The Agreement and the trial court orders in this matter all refer to the monthly spousal support payments due under the Agreement as "alimony." However, the Agreement was never adopted by any trial court in an order. Accordingly, the monthly spousal support payments are better characterized as a contractual obligation (or "spousal support payments") rather than as "alimony." *See* N.C. Gen. Stat. § 50-16.1A(1) (defining "alimony" as "an order [by a court] for payment for the support and maintenance of a spouse or former spouse").

In 2011, the parties divorced.

In 2018, Wife began dating a man and stayed almost every night at his home for over two years.

---

[1] Pursuant to the Agreement, the monthly support payments of $7,577.78 were initially characterized as $6,000.00 for spousal support and the remainder for child support. However, the monthly payment was entirely characterized as a spousal support payment by late 2014, when the parties' younger child turned 18 years of age.

In 2019, Husband stopped paying Wife monthly spousal support under the Agreement, based on his belief that Wife was cohabiting with another man and that, accordingly, his obligation to pay monthly support to Wife had terminated.

Wife commenced this action alleging Husband had breached the Agreement and seeking, in part, an order directing Husband to specifically perform his obligation to pay her monthly spousal support under that Agreement.

In June 2021, after extensive hearings on the matter, the trial court entered its Order, finding that Wife had not been cohabiting. The trial court directed Husband to "specifically perform under the [Agreement] for the payment of [spousal support]" which "shall be ongoing in the future." The trial court separately determined Husband owed fifteen months in back support payments and that Husband was obligated to continue making payments as they came due.

In July 2021, Husband noticed an appeal from the Order. This Order was not stayed.

In November 2021, the trial court entered its Contempt Order, holding Husband in civil contempt for his willful failure to comply with the earlier Order to specifically perform his obligation to pay the $113,666.70 in arrearages. Recognizing that Husband did not have the present ability to pay all the arrearages, the trial court directed that Husband could purge himself of contempt (1) by paying $38,800.00 by 29 November 2021 and (2) by paying $2,500.00 per month beginning January 2022 until he satisfied the remaining balance of $74,866.70.

On 30 November 2021, Husband tendered a check for $38,800.00. He then appealed the Contempt Order.

## II.    Analysis

This appeal concerns the July 2021 Order and the November 2021 Contempt Order. Husband makes three arguments on appeal, which we address below.

### A.    Cohabitation

Husband has contended all along that his obligation to pay spousal support ceased under the terms of the Agreement before 2019, when Wife began cohabiting with a man Husband alleges to be Wife's boyfriend. He argues the trial court erred by applying a statutory interpretation of "cohabitation" as used in the Agreement to find that Wife was not cohabiting.

In 1995, our General Assembly amended the law concerning alimony *orders*, such that an obligation to pay alimony would terminate if the dependent spouse "engages in cohabitation[.]" N.C. Gen. Stat. § 50-16.9(b) (2021). In that amendment, our General Assembly defines "cohabitation," in part, as "the act of two adults dwelling together continuously and habitually in a private heterosexual relationship" which is evidenced "by the voluntary mutual assumption of those marital rights, duties, and obligations which are usually manifested by married people, and which include, but are not necessarily dependent on, sexual relations." *Id.*

This statutory definition of "cohabitation" is similar to the definition that had been applied earlier by our Supreme Court and by this Court:

Cohabitation is defined as: "To live together as husband and wife. The mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including but not necessarily dependent on sexual relations." Black's Law Dictionary 236 (5th ed. 1979). In *Young v. Young*, 225 N.C. 340, 34 S.E.2d 154 (1945), [our Supreme] Court stated . . . "[C]ohabitation means living together as man and wife, though not necessarily implying sexual relations." *Id.* at 344, 34 S.E.2d at 157. In *Dudley v. Dudley*, 225 N.C. 83, 33 S.E.2d 489 (1945) . . . the Court stated:

> Cohabit, according to Winston's Dictionary, Encyclopedia Edition (1943), means: "To live together as man and wife, usually, though not necessarily, implying sexual intercourse." Black's Law Dictionary, Third Edition, defines the meaning of cohabitation, as: "Living together, living together as man and wife; sexual intercourse." Cohabitation includes other marital duties besides marital intercourse.

*Id.* at 85-86, 33 S.E.2d at 490-91.

*Rehm v. Rehm*, 104 N.C. App. 490, 493, 409 S.E.2d 723, 724 (1991).

In its Order, the trial court stated that it was applying the statutory definition of "cohabitation" found in N.C. Gen. Stat. § 50-16.9(b). We agree with Husband that the statutory definition of "cohabitation" does not *per se* dictate the proper interpretation of "cohabitation" as used in the Agreement. Rather, "[t]he intention of the parties is the controlling guide to [a contract's] interpretation." *Duke v. Mut. Life Ins. Co. of N.Y.*, 286 N.C. 244, 247, 210 S.E.2d 187, 189 (1974).

However, given the similarities between the statutory definition and the definition found in our case law, we conclude that any error by the trial court in relying on the statutory definition does not warrant a new trial on the issue of cohabitation. The trial court made extensive findings regarding the nature of Wife's relationship with the man she was caring for which support its determination that Wife was *not* cohabiting under either the definition of cohabitation found in the statute or under our case law. We note that Husband does not point to any evidence that either he or Wife intended some other interpretation to control, and that the Agreement otherwise allows Wife to "reside" with anyone she deems fit.

Specifically, based on competent evidence, the trial court found the following concerning Wife's relationship with her male friend: Wife and the man engaged in a sexual relationship earlier in their relationship; however, their sexual relationship did not continue. Wife, though, did begin staying most nights at the man's home for two years. However, she did so in order to care for him, as the man's mental health was deteriorating. But, at all times, Wife maintained a separate residence. She did not keep clothes at the man's home. They did not sleep in the same room. They never showed any public displays of affection. They did not share expenses. She did not benefit financially from the relationship. She did no chores at his house. And "[t]here

has been no assumption of marital duties, rights and/or obligations between [Wife] and [the man], that are associated with married people."[2]

## B. Specific Performance Order

Husband makes several arguments challenging the trial court's authority to grant Wife the remedy of specific performance in its Order.

Our Supreme Court has held that specific performance may be an appropriate remedy to enforce payment obligations under a separation agreement. *Moore v. Moore*, 297 N.C. 14, 17, 252 S.E.2d 735, 738 (1979), *overruled on other grounds by Marks v. Marks*, 316 N.C. 447, 342 S.E.2d 859 (1986). More recently, the Court stated that if the trial court finds "the state of defendant's finances warrants it, the trial judge may order specific performance of all or any part of the separation agreement unless plaintiff otherwise has an adequate remedy at law." *Cavenaugh v. Cavenaugh*, 317 N.C. 652, 658, 347 S.E.2d 19, 23 (1986).

Indeed, our Court has recently reiterated that "[a] separation agreement may be enforced through the equitable remedy of specific performance"; that "[s]pecific

---

[2] In its Order, the trial court placed the burden on Husband to show that Wife was cohabiting, holding that Husband had "failed to prove by the greater weight of the evidence that [Wife] has cohabited[.]" Certainly, if Husband's obligation was to pay court-ordered alimony, the burden would be on him to show that Wife was cohabiting to avoid his obligation to continue paying. *See, e.g., Cunningham v. Cunningham*, 345 N.C. 430, 438, 480 S.E.2d 403, 407 (1997). However, since the Agreement was never incorporated by the trial court, contract principles apply. And for a breach of contract claim, the burden is typically on the party alleging the breach. *See, e.g., Cater v. Baker*, 172 N.C. App. 441, 445, 617 S.E.2d 113, 116 (2005). Husband makes no argument that the trial court improperly placed on him the burden of proving that wife was cohabiting in this contract case. Accordingly, we do not address this issue.

performance is appropriate if the remedy at law is inadequate, the obligor can perform, and the obligee has performed her obligations"; and that "damages are usually an inadequate remedy in the context of separation agreements." *Diener v. Brown,* __ N.C. App. __, __, 892 S.E.2d 212, 215 (2023).

In its Order, the trial court decreed that Husband "is ordered to specifically perform under the contract for the payment of [spousal support]; and [Husband's] obligation shall be ongoing in the future"; that there were fifteen missed payments that were due at the time the Order was entered; and that Husband's "failure to pay alimony will be ongoing."

In their respective briefs, Husband and Wife agree that the remedy of specific performance granted by the trial court in the July 2021 Order only applied to Husband's obligation to make monthly payments going forward and, otherwise, did not apply to the fifteen months of arrearages. For instance, Husband contends the trial court erred in ordering specific performance as to his obligation to pay the arrearages, because the trial court failed to determine that Wife lacked an adequate remedy at law. And Wife contends that "[t]he Specific Performance Order states what [Husband] was obligated to do under the Agreement and what he is now obligated to do under the court order. The court does not order Defendant to *actually* perform payment of the arrears at this time; therefore, it was not necessary to make a finding or conclusion that [Wife] lacks an adequate remedy at law to collect the arrears."

Given the language in the Order including the lack of findings regarding Husband's ability to pay arrearages, we likewise construe the language of the Order concerning the arrearages as a statement that they were owed and *not* as a decree of specific performance concerning those arrearages.

We now address whether the trial court erred in its Order by decreeing that Husband specifically perform his obligation under the Agreement to make monthly $7,577.78 support payments to Wife as they become due going forward.

It is true, as Wife notes, that the parties agreed in the Agreement itself that remedies at law would be inadequate for any breach thereof. However, our Court has held that such a contractual provision does not relieve a party from her obligation to otherwise show to the court that her remedies at law are, indeed, inadequate:

> Plaintiff first argues that the Settlement Agreement expressly requires specific performance upon a party's breach. Upon review, we determine the Settlement Agreement does not extinguish Plaintiff's burden to prove the requirements for specific performance.

*Reeder v. Carter*, 226 N.C. App. 270, 276, 740 S.E.2d 913, 918 (2013).

In any event, our Supreme Court has held that specific performance "will not be decreed against a defendant who is incapable of complying with his contract[,]" *Cavenaugh*, 317 N.C. at 657, 347 S.E.2d at 23, and that "when a defendant has offered evidence tending to show that he is unable to fulfill his obligations under a separation agreement . . . the trial judge must make findings of fact concerning the defendant's

ability to carry out the terms of the agreement before ordering specific performance."
*Id.*

Here, Husband put at issue his ability to pay $7,577.78 per month going forward. In its Order, the trial court found that Husband's income and assets had decreased after he had sold his business and started a new one. The trial court, though, made no determination that Husband had the ability to pay $7,577.78 per month or otherwise to what amount Husband could pay. Rather, the trial court merely determined that Husband had "the ability to comply partially or in whole" in making the full monthly payments. Accordingly, the trial court's findings fail to support its Order directing specific performance. We, therefore, vacate the portion of the trial court's order directing Husband to specifically perform his obligation to pay monthly spousal support going forward.

We note Husband's argument that the trial court failed to determine whether Wife otherwise has an adequate remedy at law. However, since we are vacating the portion of the Order directing specific performance, we do not reach this or the other arguments of Husband. On remand, the trial court may reconsider whether Wife is entitled to a decree of specific performance.

## C. Civil Contempt Order

Husband next argues the trial court erred by entering the Contempt Order, finding Husband in contempt for failing to pay the arrearages and setting forth purge previsions, months after entering the Order. We agree.

Generally, a trial court has no jurisdiction to enforce its order by contempt while that order is on appeal. N.C. Gen. Stat. § 1-294 (providing that a perfected appeal "stays all further proceedings in the court below upon the judgment appealed from, or upon the matters embraced therein"); *see Lowder v. All Star Mills, Inc.*, 301 N.C. 561, 582, 273 S.E.2d 247, 259 (1981) (holding that upon a party noticing an appeal, "the court lost jurisdiction to take further action on the contempt matter").

Here, based on the record before us, it does not appear the trial court had jurisdiction to enter the Contempt Order. The record shows Husband noticed his appeal from the Order in July 2021, four months before the trial court held a hearing regarding Husband's alleged contempt of that Order and entered its Contempt Order finding Husband in civil contempt of the Order.

We recognized that our General Assembly has provided "[n]otwithstanding the provisions of G.S. 1-294 . . . an order for the periodic payment of alimony that has been appealed to the appellate division is enforceable in the trial court by proceedings for civil contempt during the pendency of the appeal." N.C. Gen. Stat. § 50-16.7(j) (2021). However, here, the Order was not one directing the payment of "alimony." No court had ever directed Husband to pay alimony. Rather, the Order directed Husband to pay a contractual obligation. Therefore, the trial court had no jurisdiction to enforce its Order through civil contempt after Husband properly noticed his appeal from that Order. We, therefore, must vacate the Contempt Order.

### D.    Other Matters

In the "Conclusion" section of his brief, Husband asks our Court, in part, "to remand the cause for entry of an order dismissing [Wife's] claim for specific performance, with instructions for (1) reimbursement of sums unjustly paid by [Husband] to [Wife], and (2) determination of reasonable attorney's fees owed by Wife to Husband for her breach of contract."

Regarding the request for "reimbursement of sums unjustly paid," it appears Husband is requesting an order on remand that he be reimbursed the $38,800 he paid to Wife in November 2021 as a purge condition under the Contempt Order. Though we are vacating the Contempt Order itself, we cannot say that it would be unjust for Wife to retain the $38,800 paid to her by Husband in November 2021. Indeed, we are affirming the trial court's findings in the earlier Order that Wife had not cohabited and that Husband owed Wife $113,666.70 in arrearages. And Husband has not otherwise shown why it would be unjust for Wife to retain the $38,000 paid to her by Husband to reduce the arrearages he owes.

We find no merit in Husband's request that he be awarded attorney's fees for Wife's breach of contract. First, we affirm the trial court's determination that Wife has not cohabited. Further, cohabitation by the Wife would not be a "breach" of the Agreement. Wife is free to cohabitate, as she is to remarry. Rather, cohabitation by Wife merely terminates Husband's obligation to continue paying spousal support.

III.    Conclusion

We affirm the trial court's finding in the Order that Wife has not cohabited, and that Husband continues to be obligated to pay Wife spousal support, including arrearages. We vacate the portion of the trial court's Order granting Wife the remedy of specific performance concerning Husband's obligation to pay her spousal support. And we vacate the Contempt Order, as the trial court lacked jurisdiction to enter that order while the original Order was on appeal.

We remand the matter for further proceedings. On remand, the trial court may, in its discretion, take on further evidence, make new findings, and order relief (including, for example, a money judgment on arrearages still owed) supported by its findings and conclusions.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

Judges MURPHY and THOMPSON concur.