**CAPITOL JUSTICE, LLC,**
**et al., Plaintiffs,**

v.

**WACHOVIA CORPORATION,**
**et al., Defendants.**

**Civil Action No. 07–2095 (RCL).**

United States District Court,
District of Columbia.

March 31, 2009.

David Scott Wachen, Jeremy W. Schulman, Alan B. Sternstein, Alexander Craig Vincent, Shulman, Rogers, Gandal, Pordy & Ecker, P.A., Rockville, MD, Drew D. Hansen, Susman Godfrey LLP, Seattle, WA, Sammy Ford, IV, Stephen D. Susman, Susman Godfrey LLP, Houston, TX, for Plaintiffs.

Mark William Ryan, Reginald R. Goeke, Mayer Brown LLP, Joseph Raymond Baker, Department of Justice, Washington, DC, for Defendants.

## MEMORANDUM OPINION

ROYCE C. LAMBERTH, Chief Judge.

Now before the Court is plaintiffs' Motion [32] for Reconsideration of Dismissal of Count II of the Amended Complaint. Having considered the motion, the opposition and reply thereto, and the applicable law, the Court will deny plaintiffs' motion for the reasons explained herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case were laid out in detail in the Court's original opinion, but those pertinent to this motion for reconsideration will be recounted here. Plaintiffs sought a real estate loan from defendants. Defendants sent plaintiffs a "Term Sheet" (Am. Compl. Ex. A) setting forth proposed terms for the loan. In accordance with the Term Sheet, plaintiffs paid defendant a $20,000 "Good Faith Deposit." Plaintiffs and defendants then entered into a Forward Rate Lock Agreement ("RLA"), which locked in the terms for the eventual loan. (See Am. Compl. Ex. B.) As part of the RLA plaintiffs transferred to defendant a "Mandatory Lock Fee" of $1,790,000, bringing plaintiffs' total deposit to $1,810,000. The RLA was not a binding agreement to actually fund the loan; in fact, its terms explicitly contemplated the possibility that the loan would not fund. The parties later entered into a Loan Commitment Agreement ("LCA"), which did commit defendants to funding the loan. (See Am. Compl. Ex. C.) But the LCA included a Material Adverse Change ("MAC") provision, which allowed defendants to terminate the LCA "in the event of any material adverse change in the fi-nancial condition of the Property, Borrower, [or] Borrower's managers or [owners]...." (Id. at ¶ 1.15.)

On November 16, 2007—before the loan funded—defendants terminated the LCA pursuant to the MAC provision. On December 3, 2007, defendants partially refunded plaintiffs' deposit. At issue in this motion is the amount deducted from plaintiffs' deposit in relation to the hedging arrangements defendants had entered into with the deposit funds. The statement accompanying the partial refund indicated that defendants had obtained $672,166 in proceeds from the hedging arrangement but had incurred $682,171 in "carry" charges, for a net loss of $10,005. (See Opp'n Ex. A.) That $10,005 loss was deducted from the refund of plaintiffs' deposit.

Plaintiffs sued defendants alleging, among other things, that defendants fraudulently terminated the LCA and breached same, breached the RLA, and violated their fiduciary duty and their duty of good faith and fair dealing. Plaintiffs also sought an accounting of their deposit and refund. Upon defendants' motion [21] the Court dismissed eight of plaintiffs' ten counts, leaving plaintiffs with Count I (alleging breach of the LCA) and Count X (seeking an accounting). (Mem. Op. & Order [30] (June 11, 2008).) Plaintiffs move to reconsider the Court's dismissal of Count II, which alleged breach of the RLA.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 54(c), an order that adjudicates fewer than all claims can be revised at any time before the final judgment. The Court may revise its order "as justice requires." *Cobell v. Norton,* 224 F.R.D. 266, 272 (D.D.C.2004) (Lamberth, J.). This

Court has explained that standard as including situations "when the Court has patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court." *Singh v. George Washington University*, 383 F.Supp.2d 99, 101 (D.D.C.2005) (Lamberth, J.) (quoting *Cobell*, 224 F.R.D. at 272) (internal quotation marks omitted). "The district court's discretion to reconsider a non-final ruling is, however, limited by the law of the case doctrine and 'subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *In re Ski Train Fire in Kaprun, Austria, on November 11, 2000*, 224 F.R.D. 543, 546 (S.D.N.Y.2004) (quoting *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand*, 322 F.3d 147, 167 (2d Cir.2003)).

## III. DISCUSSION

### A. The Court Did Not Err in Concluding That In This Case "Carry Costs" Constituted Breakage Costs and Were Properly Deducted.

Plaintiffs contend that the Court erred in concluding that defendants properly deducted the $682,171 in "carry" charges as Breakage Costs, leaving plaintiffs without a plausible claim for breach of the RLA. Upon reconsideration, the Court finds no error.

■ Plaintiffs' main argument is that "carry" charges are not included within the definition of Breakage Costs. Defendants do not contest plaintiffs' characterization of "carry" charges as charges incurred in the maintenance of the hedging arrangement. (*See* Mot. at 6.) Section 3 of the RLA contains the definition of Breakage Costs:

> In the event that ... the Loan ... shall not be closed or funded by Wachovia for any reason ... Borrowers acknowledge that Wachovia may suffer or incur damages, losses, liabilities, costs, fees, and expenses (including breakage, unwind and similar costs, fees and expenses) (collectively, the **"Breakage Costs"**). Borrower shall be fully responsible for all Breakage Costs.

Plaintiffs first argue that this definition includes only costs incurred *as a result of* breaking the hedging arrangement. If that interpretation is accepted, then the "carry" charges—which would have been incurred even if the hedging arrangements had not been broken—would not be included in Breakage Costs. But the definition does not mandate or even suggest plaintiffs' interpretation. Rather, the definition contemplates only that the loan may not fund and that defendant may also incur costs. That is indeed what happened; the loan did not fund, and defendant incurred expenses related to the hedging arrangement. Those expenses fell within the RLA's definition of Breakage Costs and, per the terms of the RLA, are to be borne by plaintiffs.

■ Plaintiffs' alternate argument is that "carry" charges should be considered Transaction Costs under the RLA. Plaintiffs further contend that Transaction Costs and Breakage Costs are mutually exclusive categories, and defendants therefore were not permitted to deduct the "carry" charges. The first part of plaintiffs' argument is plausible, as indicated by the Court's original opinion. Section 4 of the RLA does state that, in the event the loan does fund, "Transaction Costs" are defined as "a reasonable estimate [ ] of the

costs and expenses associated with and incurred by Wachovia in entering into and maintaining the Hedging Arrangements." Because the loan did not fund this section is not directly applicable, but it does indicate that the "carry" charges might fairly be characterized as "Transaction Costs." But plaintiffs fail to convincingly argue that because "carry" charges could be Transaction Costs, they cannot possibly be Breakage Costs. Plaintiffs' mutual-exclusivity argument rests solely on the fact that Transaction Costs and Breakage Costs are referred to separately at several points in the RLA.[1] These passages notwithstanding, any indication of mutual exclusivity between Transaction Costs and Breakage Costs is not strong enough to overcome the RLA's broad definition of Breakage Costs.

Plaintiffs protest that failure to view Transaction Costs and Breakage Costs as mutually exclusive would yield absurd results. (Mot. at 6 n. 7 (noting a possible windfall for defendants).) But the interpretation urged by plaintiffs would yield truly bizarre results. Plaintiffs contend that they are entitled to the profits from the hedging arrangement ($672, 166) but that defendants are responsible for all of the costs associated with the hedge ($682,-171). Absent clear textual indication that the parties intended such an arrangement—and the RLA contains none—the Court will not read that arrangement into the agreement. Accordingly, the Court's original interpretation of "carry" charges did not constitute error.

■ Plaintiffs also ask for discovery into defendants' calculation of "carry" charges so that plaintiffs can amend their Amended Complaint to state a proper claim for breach of the RLA. But defendants are correct that until plaintiffs have stated a claim for relief that can withstand a motion to dismiss, they should not be granted discovery. (*See* Opp'n at 9 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1966–67, 167 L.Ed.2d 929 (2007)).)

## B. The Prevention Doctrine Has Been Waived and, In Any Event, Does Not Reveal Error.

Plaintiffs contend that the Court erred in dismissing Count II because the RLA provision that allows defendants to deduct breakage costs "for any reason" cannot apply to Breakage Costs resulting from defendants' breach of the LCA. Plaintiffs argue that the "prevention doctrine" prohibits defendants from benefitting from the termination of the RLA because that termination followed directly from defendants' alleged breach of the LCA. For purposes of this motion, plaintiffs' allegation that defendant breached the LCA is assumed as true. Still, the Court finds no error for two reasons: (1) the prevention doctrine was not raised initially and thus cannot be raised on reconsideration, and (2) the prevention doctrine is not applicable here because plaintiffs assumed the risk that the loan would not fund.

■ Plaintiffs' motion for reconsideration represents the first time the preven-

---

1. Specifically (*see* Mot. at 6 n. 7):
   - Section 2(b), characterizing defendants' obligation to plaintiffs in a certain circumstance as "the Mandatory Lock Fee less any (X) Transaction Cost (as hereinafter defined), (Y) Breakage Cost (as hereinafter defined), and (Z) fees and expenses incurred by Wachovia (including attorney's fees) incurred by Wachovia in connection with the Loan (collectively, 'Wachovia's Expenses')."
   - Section 4(b) states that the "Commitment Fee" will not be returned to plaintiffs "unless and until all Breakage Costs and Transaction Costs have been paid in full."
   - Section 8 designates that in default plaintiffs may "remain liable for all Breakage Costs and Transaction Costs."

tion doctrine has been raised. Plaintiffs attempts to explain that discussion of the prevention doctrine is made necessary only by "the Court's conclusion that the $682,171 carry charges were Breakage Costs based on a misreading of the clear language of the Agreement, coupled with Wachovia's flip-flop regarding its right to recover Transaction Costs. . . ." (Pl.'s Reply at 9 n. 11.) But in their initial Motion [21] to Dismiss, defendants argued forcefully that the "for any reason" language in the RLA precluded plaintiffs' breach claim. (*See* Mot. [21] at 26.) If plaintiffs planned to raise the prevention doctrine issue, they should naturally have done so in opposition to that motion. Plaintiffs are therefore precluded from raising the prevention doctrine issue here on reconsideration.

■ Even if plaintiffs were permitted to raise the issue, however, the prevention doctrine does not establish that the Court erred in dismissing Count II. As the RLA is governed by North Carolina law,[2] plaintiffs cite *Harwood v. Shoe,* 141 N.C. 161, 53 S.E. 616 (1906) for its definition of the prevention doctrine: "[O]ne who prevents the performance of a condition, or makes it impossible by his own act, will not be permitted to take advantage of the nonperformance." *Id.* at 616. *See also Cater v. Barker,* 172 N.C.App. 441, 617 S.E.2d 113, 117 (2005); *Propst Construction Co. v. North Carolina Department of Transportation,* 56 N.C.App. 759, 290 S.E.2d 387, 388 (1982). But defendants point out that the prevention doctrine has been held inapplicable when the risk of nonperformance for "any reason" is allocated by the contract. *See, e.g., District–Realty Title Ins. Corp. v. Ensmann,* 767 F.2d 1018 (D.C.Cir.1985) (concluding in the context of an "any reason" provision that "when a

contract 'authorizes' a party to prevent a condition from occurring, 'there is no prevention' "). It appears that this is the case with the RLA: plaintiffs assumed the risk that the loan would not fund "for any reason," with no exception for defendants' breach of a separate but related contract. Plaintiffs protest that such a holding "would mean the end to the concept of contracts that bind." (Reply at 10 n. 12.) The Court thinks that a bit much. Plaintiffs knowingly agreed to bear breakage costs should the loan not fund for *any* reason. Holding plaintiffs to that commitment only strengthens the concept that contracts bind according to their terms.

### C. The Court's Dismissal of Count II is Not Inconsistent With the Rest of Its Order.

Plaintiffs argue that the Court erred in dismissing Count II while at the same time allowing Count X to proceed and dismissing Count VII. Count X seeks an accounting from defendants detailing the funds remitted to plaintiffs after termination of the RLA. Count VII, which alleged a breach of good faith and fair dealing, was dismissed as duplicative of Count II. The Court concludes that its original Order was not inconsistent or in error.

Plaintiffs contend that in denying defendants' motion to dismiss Count X for an accounting, the Court indicated that defendants might have breached section 3 of the RLA. Section 3 in pertinent part requires that defendants provide plaintiff "a statement setting forth [defendants'] determination of Breakage Costs." In declining to dismiss plaintiffs' Count X, the Court observed that it was unclear whether the "statement" required by section 3 was detailed enough to preclude plaintiff's claim

---

**2.** Section 9(c) of the RLA expressly states that the RLA shall be governed by North Carolina law.

for an accounting. (*See* Mem. Op. & Order [30] at 19 ("Whether the term allows Wachovia to provide a skeletal summary of the disposition of plaintiff's deposit, or whether it compels Wachovia to compile a more detailed listing of the transactions, cannot be determined at this stage.").) The Court did not, as plaintiffs contend, question whether defendants had complied with the RLA by issuing the statement. The only question concerned whether that statement was detailed enough to preclude a separate action for an accounting.

Plaintiffs also argue that the Court's dismissal of Count II was inconsistent with its dismissal of Count VII. The Court dismissed Count VII, which alleged breach of the duty of good faith and fair dealing, because it consisted of claims "patently identical to other causes of action." (Mem. Op. & Order [30] at 15.) Plaintiffs argue that, with Count VII dismissed, they should be allowed to move forward with Count II to pursue their good-faith claims in relation to the RLA. Plaintiffs protest that if both claims are dismissed they will get "no bites of the apple." (Mot. at 3.) Considering that the RLA portion of Count VII was dismissed because it was duplicative of Count II, plaintiffs' best argument here would seem to be that since Count II has been dismissed, the RLA portion of Count VII should be reinstated (as the Court did not squarely rule on the good-faith issue). But that is not the argument plaintiffs make. Plaintiffs instead argue that because Count VII was dismissed, Count II should be reinstated in full. This argument makes no sense. Also, case law indicates that it is not error to dismiss both a breach claim and a duplicative good-faith claim. *See Wash. Metro. Area Transit Auth. v. Quik Serve Foods, Inc.*, No. 04–838, 2006 WL 1147933, at *5, 2006 U.S. Dist. LEXIS 24510, at *14 (D.D.C.2006) (Lamberth, J.), *aff'd*, No. 06–7092, 2006 U.S.App. LEXIS 28692

(D.C.Cir.2006). Because plaintiffs have not established error, their motion cannot be granted on the basis of this argument.

### D. Dismissal of Count II for Lack of Breach Does Not Improperly Preclude Plaintiffs' Mitigation Claims.

Plaintiffs' final contention is that by dismissing Count II, the Court denied plaintiffs the opportunity to pursue their claim that defendants failed to mitigate damages (which plaintiffs say defendants may have been able to do by terminating the RLA at an earlier date). This argument is without merit. The clearest reason why this argument fails is that plaintiffs could have terminated the RLA just as easily as defendants—a point which plaintiffs admit. Plaintiffs attempt to explain away this fact by arguing that they "had no interest in terminating the [RLA]" earlier (Mot. at 15 n. 13), as plaintiffs were hoping to somehow convince defendants to rethink their decision to terminate the LCA. Plaintiffs now somehow argue that, in retrospect, defendants should have unilaterally terminated the RLA earlier and should be held liable for their failure to do so. This argument is internally inconsistent and, in any event, fails to provide grounds for reconsideration of the Court's original Order.

### CONCLUSION

For the reasons stated herein, the Court will deny plaintiffs' Motion [32] for Reconsideration. A separate Order shall issue this date.