**Ike THRASH, Plaintiff–Appellant**

v.

**COUNTRYWIDE COMMERCIAL REAL ESTATE FINANCE, INC., Defendant–Appellee.**

No. 10–60298
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Dec. 20, 2010.

Nicholas Van Wiser, Byrd & Wiser, Biloxi, MS, for Plaintiff–Appellant.

George Dewey Hembree, III, Candy Burnette, Esq., Mcglinchey Stafford, P.L.L.C., Jackson, MS, for Defendant–Appellee.

Before JOLLY, GARZA, and STEWART, Circuit Judges.

PER CURIAM: *

Plaintiff–Appellant Ike Thrash ("Thrash") appeals the district court's entry of summary judgment in favor of Defendant–Appellee Countrywide Commercial Real Estate Finance, Inc. ("Countrywide"). We AFFIRM.

## I. BACKGROUND

Thrash entered into a contract to sell Bruce and Mary Cope (collectively "the Copes") the Gulf Grove Apartments ("Gulf Grove"), a 100–unit apartment complex in Waveland, Mississippi. On behalf of the Copes and to facilitate the transaction, Thrash sought financing from Countrywide through ValueXpress, LLC. The loan application process *required* the Copes' signature on a Commitment Agreement as well as a Term Sheet. These documents were forwarded to ValueXpress. A third document, a Rate Lock Agreement, however, was permissive, and its execution had no bearing on the loan's closing. Rather, the Rate Lock Agreement was designed to help the Copes "lock-in" a favorable interest rate, if and when the loan closed.

The Commitment Agreement and the Term Sheet outlined the terms of a ten-year loan for an amount of $6,600,000. The loan was contingent upon certain conditions precedent, namely approval by Countrywide's credit committee and completion of Countrywide's due diligence. The Copes signed all three contracts on November 5, 2007.

At the time of signing, the Copes did not pay the deposit commensurate to the Rate

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Lock Agreement, nor did they initiate the rate-lock procedures the Rate Lock Agreement prescribed. On December 12, 2007, the Copes locked in a 6.85% interest rate on a $6,200,000 loan with a deposit of $124,000.

As part of Countrywide's due diligence, two of its employees, Mark DeLotto and Bryan Polizzotto, traveled to Mississippi to inspect Gulf Grove in December 2007. Thrash alleges that during this visit, on December 12, 2007, Countrywide indicated to him that they approved funding, and the only obstacle to the loan's closing was payment of the rate lock deposit. Countrywide denies its representatives made this communication and nonetheless contend that the meeting between its representatives and Thrash occurred on December 17, 2007, after the Copes had paid the rate lock deposit and executed the Rate Lock Confirmation. Though the parties contest the meeting date and details discussed, the parties do not contest that the meeting occurred only between Countrywide and Thrash. The Copes were not present.

After the Copes "locked-in" the rate, Countrywide declined to issue the loan. In light of its denial, Countrywide presented alternate options to the Copes, which the Copes rejected. The Copes sought financing elsewhere. Thrash and the Copes, through counsel, made a demand for the return of the rate lock deposit on the grounds that Countrywide refused to close the loan. Countrywide declined to refund the deposit.

On June 16, 2008, the Copes assigned to Thrash all rights, title, and interest to the cause of action resulting from Countrywide's relationship with the Copes. Accordingly, Thrash filed the instant suit on June 30, 2008, alleging breach of contract, fraudulent misrepresentation, negligent misrepresentation, and rescission. On March 15, 2010, the district court entered summary judgment for Countrywide. Thrash timely appealed.

## II. ANALYSIS

### A. Standard of Review

This court reviews the grant of summary judgment *de novo*. *Floyd v. Amite Cnty. Sch. Dist.*, 581 F.3d 244, 247 (5th Cir.2009). Summary judgment is appropriate where, considering all the allegations in the pleadings, depositions, admissions, answers to interrogatories, and affidavits, and drawing inferences in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56.

### B. Discussion

#### 1. Breach of Contract

Thrash contends that the statements made by DeLotto and Polizzotto and the Copes' subsequent performance—payment of the $124,000—created a new, oral agreement between the parties, *binding* Countrywide to close the loan. He argues that the rate-lock deposit was consideration for closing the loan. Thrash's argument fails because, principally, the Statute of Frauds bars relief and, alternatively, the Rate Lock Agreement was a separate agreement, the terms of which required any modification to be in writing.

■ Mississippi's Statute of Frauds provides that contracts "not to be performed within fifteen months from the making thereof" are governed by the Statute of Frauds, premising their validity on a writing. *See* MISS CODE ANN. § 15–3–1(d). The loan at issue here was of a ten-year duration, thereby making performance within fifteen months impossible. As such, any modification to the agreement needed

to be in writing. *Favre Prop. Mgmt., LLC v. Cinque Bambini*, 863 So.2d 1037, 1045 (Miss.Ct.App.2004) (citing *Canziaro v. Mobile Commc'ns Corp. of Am.*, 655 So.2d 25, 29 (Miss.1995)). Because the alleged oral agreement was not in writing, it is unenforceable pursuant to the Statute of Frauds. *Id.*

■ Moreover, the terms of the Rate Lock Agreement provide that any modification was to be done in writing. The Rate Lock Agreement explicitly states "[n]o modification ... of this Agreement shall be effective unless the same shall be done in a writing signed by the party against whom enforcement is sought." This clause is unambiguous and thus enforceable. *HeartSouth, PLLC v. Boyd*, 865 So.2d 1095, 1106–07 (Miss.2003)

Thrash's position that the deposit and fully executed Rate Lock Agreement bound Countrywide to fund the loan is undermined by the terms of the Rate Lock Agreement which explicitly states that the agreement is permissive. Thus, Thrash's contention that the deposit was consideration and a condition precedent to funding the loan—essentially the argument at the heart of his position—is unavailing. The Rate Lock Agreement was designed merely to protect the Copes from the severity of a future, greater interest rate; it by no means bound Countrywide to fund the loan.

Lastly, Thrash's argument that an oral modification is permissible, despite explicit terms that a modification of a contract only be made in writing, is incomplete. While it is true that a written contract can be orally modified, any such modification "must be determined upon the facts and upon the parties' pattern of conduct." *Eastline Corp. v. Marion Apartments, Ltd.*, 524 So.2d 582, 584 (Miss.1988). Here, the court is convinced that the parties' pattern of conduct does not merit disturbing the written terms of a contract due to one party's eagerness to close the loan. Thus, Thrash's breach of contract claim properly did not withstand summary judgment.

### 2. Fraudulent and Negligent Misrepresentation

To successfully establish a claim for fraudulent misrepresentation, a plaintiff must prove by clear and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury. *Levens v. Campbell*, 733 So.2d 753, 761–62 (Miss.1999).

To prove negligent misrepresentation, a claimant must prove, by a preponderance of the evidence: (1) the misrepresentation or omission of a fact; (2) that the misrepresentation or omission was material or significant; (3) failure to exercise reasonable care on the part of the defendant; (4) reasonable reliance on the misrepresentation or omission; and (5) damages as a direct result of such reliance. *Id.*

■ The documents at the heart of this transaction—the Commitment, the Term Sheet, and the Rate Lock Agreement—all required any modification to be made in writing. In light of this, the district court found that Thrash's reliance on any purported oral statements by DeLotto and Polizzotto consummating an agreement was objectively unreasonable as a matter of law. We agree. This result is even more evident when considering Thrash, by his own admission, is an experienced businessman in such transactions, amplifying

the objective unreasonableness of his reliance on any purported statements, without written confirmation. Thus, Thrash fails to meet his burden of proof with respect to his alternating misrepresentation claims.

In light of Thrash's inability to establish a *prima case* on the elements of either one of his misrepresentation claims, we need not visit Thrash's arguments that he presented facts that preclude summary judgment because they are immaterial. As this court has explained before, when considering "materiality, only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir.1987). Put differently, when "summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, ... all other contested issues of fact are rendered immaterial." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir.1992) (citations omitted). Thus, Thrash's protests about meeting his burden of persuasion, too, are immaterial, and summary judgment on these claims was appropriate.

### 3. Rescission

As Thrash avers, "rescission is a retroactive remedy and renders the contract unenforceable from the outset." *Cenac v. Murry*, 609 So.2d 1257, 1273 (Miss.1992). Yet, rescission presupposes the existence of a valid contract. Here, given the fact that we find Thrash's alleged oral modification was invalid, there existed no contract. Thus, the remedy of rescission is unavailable to him.

█ Thrash avers that rescission is appropriate under the circumstances. We construe Thrash's position as an equitable argument entitling him to the refund of the rate lock deposit. Yet, the plain terms

of the agreement make clear that Thrash, as Copes' assignee, bore the risk in the event that the deposit was lost, and any other attendant costs if the loan did not close. Accordingly, Thrash's rescission claim fails, and the district court's entry of summary judgment for Countrywide on this claim was proper. *See generally Capitol Justice, LLC v. Wachovia Corp.*, 605 F.Supp.2d 187, 189–90 (D.D.C.2009).

## III. CONCLUSION

For the reasons stated above, the judgment of the district court is AFFIRMED.