Norment v. Rabon, 2021 NCBC 1.

STATE OF NORTH CAROLINA
COUNTY OF WAKE

JOHN NORMENT,

                Plaintiff,

       v.

ROBERT GARY RABON;
JAMES MIKLOSKO;
ADVANTAGE LENDING LLC;
CAVALIER MORTGAGE
GROUP, INC.; STEEL
HOLDINGS, LLC; and
ADVANTAGE LENDING, a
common law partnership,

                Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 7014

**ORDER AND OPINION ON
NORMENT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AGAINST
ADVANTAGE LENDING, LLC**

       THIS MATTER comes before the Court on Plaintiff John Norment's ("Norment") Motion For Partial Summary Judgment against Defendant Advantage Lending, LLC ("Advantage LLC") on Norment's claims of (1) Breach of Contract; (2) Accounting; and (3) Dissolution of Partnership and Receivership. ("Motion for Summary Judgment," ECF No. 60.) In support of the Motion for Summary Judgment, Norment filed evidentiary materials (ECF Nos. 61.1–.7), and a Brief in Support of his Motion for Summary Judgment. ("Brief in Support," ECF No. 62.) Advantage LLC filed a Brief in Opposition to Norment's Motion for Summary Judgment ("Response Brief," ECF No. 68), and evidentiary materials (ECF Nos. 67.1–.4). Norment filed a Reply Brief in Support of his Motion for Partial Summary Judgment. ("Reply Brief," ECF No. 74.)

THE COURT, having considered the Motion for Summary Judgment, the evidence filed with the Court, briefs in support of and in opposition to the Motion for Summary Judgment, the arguments of counsel at the hearing, and other appropriate matters of record, CONCLUDES that the Motion for Summary Judgment should be DENIED, for the reasons set forth below.

> *Oak City Law, LLP, by Robert E. Fields, Esq., Samuel Pinero, Esq., and Caroline L. Trautmam, Esq. for Plaintiff John Norment.*

> *The Farrell Law Group, P.C., by Richard W. Farrell, Esq. for Defendants Robert Gary Rabon, James Miklosko, Advantage Lending LLC, and Advantage Lending, a common law partnership.*

McGuire, Judge.

## I.     FACTS

1.     In 1998, Norment and Defendant James Miklosko ("Miklosko") formed Defendant Cavalier Mortgage Group, Inc., ("Cavalier") as a mortgage broker. (Dep. of Miklosko, ECF No. 61.3 at pp. 32–33).  Norment and Miklosko were each 50% shareholders in, and the sole directors of, Cavalier.  The North Carolina Secure and Fair Enforcement (SAFE) Mortgage Licensing Act ("SAFE Act" or the "Act," N.C.G.S. § 53-244.010 et seq.) requires individuals and businesses engaging in the mortgage business as a mortgage loan originator, transitional mortgage loan originator, mortgage lender, mortgage broker, or mortgage servicer to be licensed through the North Carolina Commissioner of Banks. ("NCCOB") (N.C.G.S. § 53-244.100(a)). The SAFE Act sets standards for licensure, including net worth and liquidity requirements for license holders.  At times relevant to this lawsuit, the capital requirement for mortgage brokers was approximately $25,000 while the capital

requirement for mortgage lenders was at least one million dollars ("$1 million"). *Id.*, § 53-244.104. The Act also requires NCCOB approval of licensure transfers from one entity to another through mergers and ownership changes. *Id.*, § 53-244.100(e).

2. Cavalier subsequently also became licensed as a mortgage lender. (ECF No. 61.3 at p. 24.) Cavalier satisfied the capital requirements for becoming a mortgage lender using office condominiums owned by Norment and Miklosko. (ECF No. 61.3, at pp. 21–26.) Cavalier was very profitable through approximately 2013. (Affidavit of Norment, ECF No. 61.7, ¶ 10.)

3. On April 2, 2004, Robert Gary Rabon ("Rabon") formed Advantage LLC as a mortgage broker. (Dep. of Rabon, ECF No. 61.2 at pp. 18, 63.) Rabon executed the Operating Agreement of Advantage Lending, LLC ("Operating Agreement") establishing himself as Advantage LLC's sole member and manager and providing, *inter alia*, requirements for admitting new members and amending the Operating Agreement. (Exs. To Dep. of Norment, ECF No. 23.2, at Ex. 3, Operating Agreement.) Advantage LLC operated as a "captive" of Coldwell Banker Advantage Realty ("Advantage Realty"), a real estate brokerage firm controlled by Rabon. Advantage LLC was marginally successful, but by the end of 2013, its net worth on its books was negative. (ECF No. 61.2 at pp. 17–27, 58–60, 129–32, and Ex. 41, Advantage LLC Financial Statement.)

4. In or around early 2014, Rabon and Miklosko developed a plan to move Cavalier's business to Advantage LLC (the "Transaction"). Cavalier had lending experience and an underwriting department, Norment's and Miklosko's loan

originations, processing and operational management experience, and the capital required for a licensed mortgage lender. (ECF No. 61.3, at pp. 21–26, 32–36; ECF No. 61.2, at pp. 17–27, 58–60; November 14, 2018 Dep. of Norment, ECF No. 23.1, at p. 33.) Advantage LLC lacked the lending capabilities and the net worth needed to obtain a mortgage lender license, but had relationships with Advantage Realty real estate agents and access to home buyers seeking financing from the agents. (ECF No. 61.2, at pp. 17–27, 58–60; ECF No. 23.1, at p. 33; ECF No. 61.3, at pp. 44–51.) The Transaction was intended to help Advantage Realty offer its home buyers in-house lending and to help Norment and Miklosko increase their lending volume through access to Advantage Realty agents. (*Id.*)

5. Sid Aldridge ("Aldridge"), a Raleigh attorney, assisted the parties with and sought regulatory approval of the Transaction from the NCCOB. (ECF No. 23.1, at p. 40.) Norment, Rabon, Miklosko, and Advantage LLC, by Rabon, executed documents prepared by Aldridge to effectuate the Transaction. In particular, they signed the Agreement for Subscription for Membership Interest in Advantage LLC ("Subscription Agreement," ECF No. 23.2, Ex. 5, at p. 60) and an Agreement to Admission of Members and Amendment to Operating Agreement of Advantage LLC ("Admission Agreement," ECF No. 23.2, Ex. 4, at p. 57).

6. Under the Subscription Agreement, Norment and Miklosko each contributed $1 million in cash and property to Advantage LLC for a thirty-three and one-third percent (33 1/3%) membership interest in "the profits, losses, distributions,

capital, and right to vote and participate in the management of" Advantage LLC.

(ECF No. 23.2, at Ex. 5, p. 1.) The Subscription Agreement further provides:

> If the NCCOB has not approved *this transaction* by July 31, 2014, *the admission of Subscribers shall be null and void*, and the Company *shall return* all consideration paid by Subscribers to each of them, and Subscribers shall return to the Company any distributions received by them from the Company with respect to their membership interest.

(*Id.* at p. 2.) (emphasis added). The Subscription Agreement was effective on January 1, 2014.

7. The Admission Agreement, also effective on January 1, 2014, amended the Operating Agreement to admit Norment and Miklosko as members of Advantage LLC per the terms of the Subscription Agreement. (ECF No. 23.2, at Ex. 4.) The Admission Agreement also provides, *inter alia*, as follows:

> Pursuant to the terms of the Subscription Agreement, the admission of Purchasers *shall be null and void* if the [NCCOB] *has not approved the admission* of Purchasers by June 31, 2014.[1] In such case, all consideration paid by Purchasers *shall be* returned to them, and Purchasers shall return to the Company any distributions paid to them by the Company with respect to their Membership Interests.

(*Id.* at p. 2.) (emphasis added). The Admission Agreement further states that "[e]xcept as expressly set forth in this Amendment, the Operating Agreement is hereby ratified and reaffirmed." (*Id.* at p. 1.)

8. As their respective $1 million contributions, Norment and Miklosko caused the transfer of $355,000 of cash, the office condominiums, and certain other

---

[1] The Court notes that the parties concede that the date "June 31, 2014" in the Admission Agreement is in error and was intended to be "July 31, 2014." (ECF No. 61.1 at p. 56.)

assets held by Cavalier.  (ECF No. 61.7, ¶ 2; ECF No. 23.1, at pp. 13, 65–68, 84; ECF No. 61.2, at pp. 28, 34–39; ECF No. 61.3, at pp. 295–301, Exs. 38 (Bank Statement) and 39 (Wake County Real Estate Data Record).)  It is undisputed that Norment made the $1 million contribution to Advantage LLC required by the Subscription Agreement.   (ECF No. 61.2, at pp. 38–39.)

9.     In his deposition, Rabon acknowledged that failure to obtain NCCOB approval by July 31, 2014 would entitle Norment to the return of his capital:

> Q  Okay.  So  the  operating  agreement  of Advantage Lending provided that approval of the admission of John and Jim as members of Advantage Lending had to occur by July 31st, 2014 or the capital
>
> A Yeah.
>
> Q  --should  be  returned  to  them.  Is  that correct?
>
> A That's what the paragraph says.
>
> Q  Okay.  And  that's  what  you  agreed  to, correct?
>
> A I signed it.
>
> Q And you signed it with intent to agree to it, correct?
>
> A I wouldn't sign it otherwise.

 (ECF No. 61.2, at p. 44.)

10.    In order for Cavalier to transfer its mortgage lender license, the Transaction had to be approved by the NCCOB.  The SAFE Act provides that:

Licenses and registrations issued under this Article are not assignable. Control of a licensee or registrant shall not be acquired through a stock purchase, merger, or other device without the prior written consent of the [NCCOB]. The [NCCOB] shall not give written consent if the [NCCOB] finds that any of the grounds for denial, revocation, or suspension of a license or registration are applicable to the acquiring person.

N.C.G.S. § 53-244.100(e).

11. Regulations adopted by the NCCOB under the Act further provide, in relevant part:

(b) A change in the identity of a control person or any material change in organizational structure shall be considered a transfer or assignment of the license or registration. A licensee or registrant may transfer a license or registration without submission of an application by providing the following to the Commissioner:

(1) the licensee or registrant gives notice to the Commissioner at least 60 days in advance of the effective date of the proposed change; and

(2) the Commissioner determines that permitting the licensee or registrant to continue to operate under its existing license or registration would not be inconsistent with the purposes of the Act.

. . .

(d) The Commissioner shall waive or reduce the advance notice requirement of Subparagraph (b)(1) of this Rule if the Commissioner determines that:

(1) circumstances beyond the licensee or registrant's control would make compliance unduly burdensome to the licensee or registrant;

(2) consumers would not be harmed by such a waiver or reduction of the advance notice requirement;

> (3) the licensee or registrant has otherwise satisfied the requirements of this Rule; and

> (4) waiver of the requirement of Subparagraph (b)(1) is in the public interest.

4 N.C. Admin Code .0202 (1978) (hereinafter, "the code").

12. In addition to NCCOB's approval, the parties also needed approval from HUD/FHA[2] in order for Advantage LLC to take over that portion of Cavalier's mortgage lending business. (ECF No. 61.7, ¶ 5; ECF No. 67.1, ¶ 6.) The HUD/FHA approval was not obtained until July 2015. (ECF No. 61.7, ¶ 5.)

13. Aldridge communicated with Sara Weed, director and counsel of the NCCOB Non-Depository Entities Division, seeking NCCOB's approval of the Transaction. (Dep. of Aldridge, ECF No. 61.1 at pp. 60, 67–79, 119, 127, Ex. 15 (Letter to NCCOB).) On May 6, 2014, Aldridge sent Weed a letter summarizing the nature of the transaction. (ECF No. 61.1, at Ex. 15.) The letter stated, in relevant part, as follows:

> Due to the two companies being different types of legal entities (LLC and corporation), there are limitations on doing a formal merger. Therefore, the de facto merger will be carried out by the contribution of certain assets to Advantage by Mr. Miklosko and Mr. Norment in exchange for ownership interest in Advantage. Upon completion of that transaction, Mr. Rabon, Mr. Miklosko, and Mr. Norment will each own a 33 1/3 percent membership interest in Advantage.

> After Mr. Miklosko and Mr. Norment become members of Advantage, both companies will continue to operate separately until Advantage is approved as an FHA lender. Once that occurs, Cavalier will take the required steps to

---

[2] The United States Department of Housing and Urban Development and the federal Fair Housing Act.

wind down and cease operations. At that time, Mr. Miklosko and Mr. Norment will apply to become qualified individuals of Advantage.

From our conversation, I understand my client may be required to give advance notice of the transaction to the Commissioner of Banks. Due to urgent circumstances related to completing the transactions, we would ask that the Commissioner expedite this request for approval so the transaction can be finalized as soon as possible. In the alternative, we would request that the Commissioner waive the advance notice requirements of 04 NCAC 03M.0202(b)(I) in that a 60-day waiting period would be unduly burdensome. Consumers would not be harmed by a waiver and/or reduction in the advance notice requirement in that the entities will continue to operate and all consumers will be properly serviced. Allowing the matter to transfer immediately would effect a streamlining process and give the public access to a stronger mortgage lending source.

(*Id*. at p. 2.)

14. On May 28, 2014, Aldridge sent an email to Norment, Rabon, and Miklosko stating the following:

I just got off the phone with Sara Weed. Everything is fine with them. They understand and approve the transaction. I will write to her a confirming letter. She said you have to file an advance change notice with NMLS.[3] They will get a copy of that, but that it is purely administrative and it isn't an approval process. I presume you guys understand that aspect better than I do.

(ECF No. 23.2, Ex. 10 (Aldridge Email).)

15. It is undisputed that NCCOB did not issue any written document stating that the Transaction was approved prior to July 31, 2014. (ECF No. 61.1, at p. 60, 67–79; ECF No. 61.3, at pp. 91–92; ECF No. 61.2, at pp. 44–45.) It is also

---

[3] The Nationwide Multistate Licensing System & Registry. ("NMLS")

undisputed that Aldridge, Miklosko, and Rabon did not submit any additional notice to NCCOB or the NMLS and did not follow-up to confirm that approval had been obtained from NCCOB by July 31, 2014. (ECF No. 61.1, at pp. 60, 67–79; ECF No. 61.3, at pp. 91–92; ECF No. 61.2, at pp. 44– 45.) The NCCOB approved the transfer of Cavalier's license and issued a mortgage lender license to Advantage LLC on October 27, 2014. (Mortgage Lender License, ECF No. 103.1; NCCOB State License/Registration Status History for Advantage LLC, ECF No. 103.3.)[4]

16. Norment alleges that based on Aldridge's May 28, 2014 email, he believed that the "necessary approval from NCCOB had been obtained." (ECF No. 61.7, ¶ 4.) Norment continued to work for Advantage LLC until March 31, 2016. (*Id.* ¶¶ 7, 14.) However, during 2014 and 2015, Norment claims that Rabon and Miklosko began to exclude Norment from management of Advantage LLC, and that he became increasingly concerned with the financial condition of Advantage LLC caused by what he believed was mismanagement by Rabon and Miklosko. (*Id.*, ¶¶ 5–9, 12.) Norment alleges that during the same period he expressed concerns to Rabon and Miklosko that "required approvals" and "compliance actions" related to the merger were not being "obtained timely." (*Id.*, ¶ 5.)

17. Norment claims that he first learned in October 2016 that the NCCOB had not provided written approval of his admission to membership in Advantage LLC by July 31, 2014. (*Id.*, ¶ 7.) Defendants vehemently dispute Norment's claim,

---

[4] The NCCOB's approval of the Transaction permitted Advantage LLC to begin making conventional mortgage loans under Advantage LLC's, instead of Cavalier's, authority. Advantage LLC was not able to make HUD/FHA mortgage loans until approval was obtained in July 2015.

contending that he was heavily involved in the merger process, that he was kept informed of the approval process, and that he "clearly knew . . . the status of approvals not having been obtained from NCCOB in July 2014." (ECF No. 67.1, ¶¶ 3–7; Affidavit of Miklosko, ECF No. 67.2, ¶¶ 34, 7–10.)

18. Norment and Miklosko continued to operate Cavalier during the time the parties were seeking approvals for the merger. (ECF No. 61.7, ¶ 3; ECF No. 67.2, ¶¶ 12, 16.) During this period, Cavalier was under significant financial distress and was being investigated by the NCCOB and HUD/FHA. (ECF No. 61.7, ¶¶ 6, 8; ECF No. 67.2, ¶¶ 6–7, 11.) In July 2015 Advantage LLC took over all mortgage lending processes for Cavalier and Advantage LLC. (ECF No. 67.2, ¶ 14.) Cavalier was dissolved in July 2015. (*Id.*, ¶ 14.)

## II. PROCEDURAL BACKGROUND

19. Rabon and Miklosko initiated this lawsuit on May 28, 2019 by filing a complaint against Norment. (ECF No. 3.) On July 25, 2019, the Court granted Norment's Motion to Add Counterclaim-Defendants pursuant to N.C.R. Civ. P. 13(h), allowing Norment to add Advantage LLC, Cavalier, Steel Holdings, Inc., ("Steel") and Advantage Lending, a common law partnership as Counterclaim-Defendants (hereinafter, Rabon, Miklosko, Advantage LLC, Cavalier, Steel, and Advantage Lending, a common law partnership are referred to as "Counterclaim Defendants"). (ECF No. 12.) On July 29, 2019, Norment filed his First Amended Answer and Counterclaim Complaint reflecting this change. (ECF No. 13.) On September 11,

2019, Counterclaim Defendants filed their Amended Answer and Affirmative Defenses. (ECF No. 17.)

20. On October 2, 2019, Norment filed his Second Amended Answer and Counterclaim Complaint. ("Second Amended Counterclaim," ECF No. 20, at pp. 5–41.) In the Second Amended Counterclaim, Norment alleges claims for: Conversion/Trespass to Chattels against Rabon, Miklosko, and Advantage LLC; Breach of Contract against Rabon, Miklosko, and Advantage LLC; Action to Quiet Title and for Legal and Equitable Relief as to Real Estate against Rabon, Miklosko, and Advantage LLC; Breach of Contract-Unpaid Wages against Advantage LLC; Quantum Meruit against Advantage LLC; Breach of Fiduciary Duty against Miklosko and Cavalier; Breach of Fiduciary Duty for Constructive Trustees and of Partners against Rabon and Miklosko; Breach of Fiduciary Duty in Management of Partnership and Advantage LLC against Rabon and Miklosko; Constructive Fraud against Rabon and Miklosko; Fraud/Misrepresentation against Miklosko, Rabon, and Advantage LLC; Accounting against all Counterclaim-Defendants; Winding Up of Cavalier; Receivership against Miklosko, Dissolution of Steel, Claim for Dividends and Receivership against Miklosko and Steel; Dissolution of Partnership and Receivership against Rabon and Miklosko; and Dissolution and Receivership against Advantage LLC. (*Id.*)

21. On October 3, 2019, Counterclaim Defendants filed their Answer and Affirmative Defenses to Norment's Second Amended Complaint. (ECF No. 21.) In

response to Norment's counterclaims, Advantage LLC pleaded, *inter alia*, an affirmative defense of waiver.

22. On December 5, 2019, Rabon and Miklosko voluntarily dismissed their claims against Norment without prejudice (ECF No. 33), leaving Norment's counterclaims against Counterclaim-Defendants as the only remaining claims in this action.

23. On March 23, 2020 the Court issued an order disqualifying Counterclaim Defendant's counsel from representing Cavalier and Steel and striking the pleadings filed on behalf of Cavalier and Steel. (Order on Norment's Motion to Strike Answers of Cavalier and Steel and to Disqualify Counsel, ECF No. 45.) No new counsel ever made an appearance on behalf of Cavalier or Steel in this action.

24. The Court issued a notice realigning the parties and amending the case caption in this matter to reflect that Norment is the Plaintiff and Counterclaim-Defendants are Defendants. (Hereinafter, Rabon, Miklosko, Advantage, Cavalier, Steel, and Advantage Lending, a common law partnership are collectively "Defendants") (Notice of Realignment of Parties and New Case Caption, ECF No. 75.)

25. On June 15, 2020, Norment filed his Motion for Partial Summary Judgment Against Advantage LLC and a Brief in Support. ("Brief in Support," ECF No. 62.) On July 15, 2020, Advantage LLC filed its Brief in Opposition to Norment's Motion for Summary Judgment ("Response Brief," ECF No. 68), and Norment filed a Reply Brief on July 24, 2020. ("Reply Brief," ECF No. 75.)

26. The Court held a hearing on the Motion for Summary Judgment on October 13–14, 2020, at which the Court heard oral arguments from counsel. The Motion for Summary Judgment is now ripe for disposition.

## III. STANDARD OF REVIEW

27. "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that any party is entitled to judgment as a matter of law.'" *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (quoting N.C.G.S. § 1A-1, N.C. R. Civ. P. 56(c)). The moving party bears the burden of presenting evidence which shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App. 561, 563, 668 S.E.2d 349, 351 (2008). An issue is "material" if "resolution of the issue is so essential that the party against whom it is resolved may not prevail." *McNair v. Boyette*, 282 N.C. 230, 235, 192 S.E.2d 457, 460 (1972). "A 'genuine issue' is one that can be maintained by substantial evidence.'" *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000).

28. "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784–85, 534 S.E.2d 660, 664 (2000). As recently reiterated by the North Carolina Court of

Appeals, the burden on the non-movant goes beyond merely producing some evidence or a scintilla of evidence in support of its claims. Rather, if the movant meets this burden, the nonmovant must take affirmative steps to set forth specific facts showing the existence of a genuine issue of material fact. An adverse party may not rest upon the mere allegations or denials of his pleading. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and means more than a scintilla or a permissible inference. *Khashman v. Khashman*, No. COA16-765, 2017 N.C. App. LEXIS 715, at *15 (N.C. Ct. App. Sept. 5, 2017) (citations and internal quotation marks and modifiers omitted).

## IV. ANALYSIS

29. Norment seeks summary judgment only as to his claims for (1) breach of the Subscription Agreement and Admission Agreement (Second Amended Counterclaim, ECF No. 20, ¶¶ 117–124), (2) an accounting of Advantage LLC, Cavalier, and Steel (*Id.*, ¶¶ 176–181), and (3) dissolution of Advantage Partnership (*Id.*, ¶¶ 203–11).[5] (ECF No. 60.) The Court begins its analysis by summarizing the parties' contentions on the Motion for Summary Judgment.

### A. Norment's Argument

30. Norment argues that, under the Agreements, his membership in Advantage LLC was rendered null and void when NCCOB did not approve his

---

[5] Norment alleges claims for dissolution of Steel, of Advantage LLC, and, alternatively, of Advantage Partnership. (ECF No. 20, ¶¶ 195–214.) In his Brief in Support and Reply Brief, Norment states that the Motion for Summary Judgment seeks judgment only on his claims for an accounting and dissolution of Advantage Partnership. (ECF No. 62, at p. 21; ECF No. 82, at pp. 2, 11.)

admission to membership in Advantage LLC by July 31, 2014. (ECF No. 62, at pp. 1–2, 12–17.) Norment contends that such approval from NCCOB was required by statute and regulation for him to become a member in Advantage LLC. (*Id.* at pp. 13–14.)[6] Norment claims that he believed Aldridge's email on May 28, 2014 meant that the NCCOB had approved his admission to membership in Advantage LLC. (*Id.* at p. 16.) Norment admits that he "was aware that other required approvals" needed to implement the combination of Advantage LLC and Cavalier "had not been obtained before July 31, 2014." (*Id.* at p. 2.) However, Norment contends that he "did not become aware until 2016 that approval of his admission as a member of Advantage LLC had not been obtained." (*Id.*) Norment argues that the failure to obtain approval of his admission to membership required Advantage LLC to return his $1 million capital investment, and the failure to do so is a breach of the Subscription Agreement and Admission Agreement. (*Id.* at pp. 17–19.)

31. Norment contends that since his membership in Advantage LLC was rendered null and void, he never became a member of Advantage LLC. Norment

---

[6] The Court believes Norment's claim that the NCCOB had would issue an approval of Norment's admission to membership with Advantage LLC is something of a "red herring." The SAFE Act provides that "[c]ontrol of a licensee . . . shall not be acquired through a stock purchase, merger, or other device without the prior written consent of the [NCCOB]." N.C.G.S. § 53-244.100(e). The plain language of the statute requires the NCCOB's consent to a transaction that will result in the transfer of control of a mortgage license. There is simply no reading of the Act and its implementing regulations that suggests that when transfer is accomplished through a transaction involving an LLC, the NCCOB must issue a written approval of admissions to membership in a limited liability company separate from approval of transfer of control of the license. To the extent the Admission Agreement requires NCCOB's approval of Norment and Miklosko's admission to Advantage LLC, there is, at a minimum, a fact dispute over whether Norment reasonably believed that written approval of his admission was something different than consent to the transaction by NCCOB.

argues that after July 31, 2014, he, Rabon, and Miklosko conducted business as a common law partnership. (*Id*. at pp. 19–20.) Norment seeks dissolution and an accounting of the common law partnership.

## B. Advantage LLC's Argument

32. On the other hand, Advantage LLC contends that the approval contemplated by the Agreements was the NCCOB's consent to the transfer of "control" over Cavalier's mortgage lending license to Advantage LLC and Rabon. *See* N.C.G.S. § 53-244.100(e) ("Control of a licensee or registrant shall not be acquired through a stock purchase, merger, or other device without the prior written *consent* of the Commissioner."). Advantage LLC concedes that the NCCOB did not consent to, or approve, the Transaction by July 31, 2014. However, Advantage LLC argues that the evidence establishes Norment was fully aware that approval had not been obtained by July 31, 2014 and waived any breach of the Agreements by continuing to work towards completion of the Transaction until March 2016, thus failing to exercise his right to claim return of his investment. (ECF No. 68, passim.) Advantage LLC contends that Norment became a member of Advantage LLC upon the NCCOB's approval of the Transaction in October 2014. (*Id*. at pp. 14–16.) Advantage LLC argues that Norment's claim that he, Rabon, and Miklosko functioned as a common law partnership after July 31, 2014 is not supported by the facts or law. (*Id*. at p. 25.)

33. Advantage LLC further argues that Norment "abandoned [Advantage LLC] to pursue other interests" and has not established grounds for judicial dissolution of Advantage LLC. (*Id*. at pp. 22–24.)

**C. Breach of Contract**

34.    Since the claims for accounting and dissolution depend on resolutions of issues arising under the breach of contract claim, the Court first addresses that claim.

35.    In North Carolina, a party asserting breach of contract must show "(1) existence of a valid contract; and (2) breach of the terms of that contract." *Cater v. Barker*, 172 N.C. App. 441, 445, 617 S.E.2d 113, 116 (2005), *citing Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000).  The well-settled elements of a valid contract are offer, acceptance, consideration, and mutuality of assent to the contract's essential terms.  *Snyder v. Freeman*, 300 N.C. 204, 218, 266 S.E.2d 593, 602 (1980) ("The essence of any contract is the mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds.").  "In the obligations assumed by a party to a contract is found his duty, and his failure to comply with the duty constitutes the breach."  *Sale v. Highway Comm'n*, 242 N.C. 612, 619, 89 S.E.2d 290, 296 (1955).  In construing a contract, the courts are to give full effect to each unambiguous contractual provision.  *Singleton v. Haywood Elec. Membership. Corp.*, 357 N.C. 623, 629, 588 S.E.2d 871, 875 (2003) (holding that "various terms of the [contract] are to be harmoniously construed, and if possible, every word and every provision is to be given effect").

36.    The parties do not dispute that: (a) the Agreements are valid contracts executed between Norment, Miklosko, Rabon, and Advantage LLC; (b) the Admission Agreement provided that it would be "null and void" if the NCCOB "has not approved the admission of [Norment and Miklosko] by July 31, 2014" and the Subscription

Agreement provided that it "shall be null and void" if NCCOB did not approve the "transaction by July 31, 2014"; (c) the NCCOB did not approve the Transaction until October 27, 2014; (d) the Agreements provided that if approval from the NCCOB was not obtained by July 31, 2014, Advantage LLC "shall" return the contributions paid by Norment and Miklosko; and, (e) Advantage LLC did not return Norment's contribution.

37. While these undisputed facts would establish a breach of the Agreements, Advantage LLC argues that Norment waived his rights by continuing to work with Rabon and Miklosko, and on behalf of Advantage LLC, toward completing the Transaction after July 31, 2014, and up until March 2016.

38. It is well settled in North Carolina that a "party may waive a contractual right by any intentional and voluntary relinquishment." *McNally v. Allstate Ins. Co.,* 142 N.C. App. 680, 683, 544 S.E.2d 807, 809-10 (2001) (citation omitted). Advantage LLC has the burden of proof on its waiver defense. *Rose v. Vulcan Materials Co.*, 282 N.C. 643, 664, 194 S.E.2d 521, 535 (1973).

39. "The essential elements of waiver are (1) the existence, at the time of the alleged waiver, of a right, advantage or benefit; (2) the knowledge, actual or constructive, of the existence thereof; and (3) an intention to relinquish such right, advantage or benefit." *Fetner v. Granite Works*, 251 N.C. 296, 302, 111 S.E.2d 324, 328 (1959) (citation omitted). Furthermore,

> a waiver is sometimes defined to be an intentional relinquishment of a known right. The act must be voluntary and must indicate an intention or election to dispense with something of value or to forego some

advantage which the party waiving it might at his option have insisted upon. The waiver of an agreement or of a stipulation or condition in a contract may be expressed or may arise from the acts and conduct of the party which would naturally and properly give rise to an inference that the party intended to waive the agreement. Where a person with full knowledge all the essential facts dispenses with the performance of something which he has the right to exact, he therefore waives his rights to later insist upon a performance. A person may expressly dispense with the right by a declaration to that effect, or he may do so with the same result by conduct which naturally and justly leads the other party to believe that he has so dispensed with the right.

*Guerry v. Trust Co.*, 234 N.C. 644, 648, 68 S.E.2d 272, 275 (1951).

40. "The question of waiver is generally one of intention, which is said to lie at the foundation of the doctrine. It may sometimes be declared as matter of law, but is usually an inference of fact for the jury." *Brittain v. Taylor*, 168 N.C. 271, 276, 84 S.E. 280, 282 (1915).

41. Advantage LLC argues that the record establishes that Norment knew that the NCCOB did not approve the Transaction by July 31, 2014, waived the approval deadline in the Agreements and, therefore, cannot pursue a claim for breach of contract. (ECF No. 68, at pp. 18–22.) Norment argues, for several reasons, that he either could not have waived his rights as a matter of law, or that Advantage LLC has failed to establish a fact dispute as to the elements of a waiver defense. (ECF No. 62, at pp. 6–10; ECF No. 82, at pp. 16–17, 19–20.) The Court considered each of Norment's arguments but finds them to be without merit.

42. The Court has thoroughly reviewed the evidence in the record and finds that substantial issues of genuine fact exist as to whether Norment waived the

requirement that NCCOB approval be obtained by July 31, 2014, including: whether Norment knew or should have known that the NCCOB had not approved the Transaction by July 31, 2014; whether his conduct "naturally and justly" led Advantage LLC to believe that Norment was waiving the approval deadline, *Guerry*, 234 N.C. at 648, 68 S.E.2d at 275; and whether Norment intended to waive the approval deadline. The facts and inferences arising from those facts should be determined by a jury. *Brittain*, 168 N.C. at 276, 84 S.E. at 282. Therefore, to the extent it seeks summary judgment as to the claim for breach of contract, the Motion for Summary Judgment should be DENIED.

43. Since the Court concludes that summary judgment on Norment's claim for breach of the Agreements must be denied, it also concludes that summary judgment cannot be granted on the current record regarding whether Norment is entitled to a return of his investment in Advantage LLC, whether Norment is a member of Advantage LLC, or whether his work with Rabon, Norment, and Advantage LLC created a common-law partnership.

**D. Dissolution, Accounting, and Receivership**

44. Norment seeks summary judgment only as to his claims for dissolution, accounting, and appointment of a receiver premised on the contention that he, Rabon, and Miklosko operated as a common law partnership after July 31, 2014. (ECF No. 82, at pp. 11–12.) Since the Court has concluded that it cannot grant summary judgment on the issue of whether a common law partnership was formed, it also cannot grant summary judgment on Norment's claims for dissolution, accounting,

and appointment of a receiver premised on the contention that he, Rabon, and Miklosko formed a common law partnership. Accordingly, to the extent it seeks summary judgment as to these claims, the Motion for Summary Judgment should be DENIED.

**V.     Conclusion**

THEREFORE, IT IS ORDERED that the Motion for Summary Judgment is DENIED.


SO ORDERED, this the 5th day of January, 2021.


/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases